47037. T. K. v. STATE OF GEORGIA.[a]

---

[a] *Code Ann.* § 24A-801 (d) provides upon appeal "the anonymity of the child shall be preserved by appropriate use of initials."

Submitted April 5, 1972—Decided May 11, 1972.

*Nunn, Geiger & Rampey, D. L. Rampey, Jr.,* for appellant.

*R. Avon Buice, District Attorney,* for appellee.

Clark, Judge. This case marks the third appeal to this court on questions of legal rights of juveniles under the new Juvenile Court Code[1] of Georgia (Ga. L. 1971, p. 709 et seq.; *Code Ann.* § 24A-101 et seq.) which became effective July 1, 1971. Even though we affirm the juvenile court's final decision in this appeal we find it necessary under the enumeration of error raising this question as well as for future guidance to determine whether our new statute entitles an accused to be represented by counsel at the stage known as "detention hearing."

In *Reed v. State of Ga.* 125 Ga. App. 568 (188 SE2d 392) we dealt with the notice requirement which the statute expressly makes a prerequisite to the conduct of any "transfer" hearing in which the juvenile court will consider relinquishing its jurisdiction and transferring the offense to another court for prosecution, e.g., the superior court. We there ruled the notice to the accused and the accused's par-

---

[1]Most helpful to our deliberations have been three articles by law school professors dealing with this new Code: "The New Juvenile Code of Georgia" by Glen W. Clark, 7 Ga. State Bar Jour. 409; "The Juvenile Court v. Due Process—A Comparison" by W. Pitts Carr, 8 Ga. State Bar Jour. 9; and "Persisting Problems of Juvenile Georgia Juvenile Court Practice" by Lucy S. Henritze, 23 Mercer L. Jour. 341. The court also had the benefit through courtesy of Prof. Robert S. Stubbs by loan of an advance copy of the 1972 Supplement to his book entitled "Georgia Law of Children."

ents must state the specific purpose of the proposed "transfer" hearing.

In *Mack v. State of Ga.* 125 Ga. App. 639 (188 SE2d 828) this court was called upon to review a finding of delinquency at an "adjudication hearing" in which the evidence presented below included an incriminating statement by the juvenile to a detective at home in the presence of his mother after having been properly advised of his rights[2] in the presence of his mother. The court was also required to consider the extent to which the juvenile court retains dispositional authority once a committal to the Division of Children and Youth has occurred.

In the case sub judice appellant appeals from an order finding him to be in a state of delinquency and committing him to the Division of Children and Youth for care, supervision and planning. The petition filed against appellant alleged, in effect, his participation on two occasions of vandalism of a junior high school and thereby committing the offenses of burglary and criminal damage to property.

The record reveals that on October 9, 1971, an officer of the Warner Robins Department of Public Safety responded to a call that somebody was in one of the buildings on the Warner Robins Junior High School campus. The officer saw and stopped two boys who started to leave on bicycles as he arrived. The boys, one of whom was appellant, were promptly delivered to a juvenile officer for Houston County.

---

[2] In United States v. Miller, 453 F2d 634, it was held that juvenile who received Miranda warnings, signed printed waiver form and understood his rights better than many adults appearing before court, was not conclusively presumed to be incapable of waiving his constitutional rights due to being only 14 years of age. Compare with *Freeman v. Wilcox,* 119 Ga. App. 325 (167 SE2d 163), decided prior to our Juvenile Court Code wherein this court ruled under the Gault case requirements that both the child and *his parent* must be advised as to his constitutional rights. See discussion of this case in 22 Mercer L. Rev. 597.

Any juvenile officer receiving custody of a child is required to make an immediate investigation and release the child unless it appears that detention is warranted or required. *Code Ann.* § 24A-1404. Such taking into custody is expressly stated to be "not an arrest, except for the purpose of determining its validity under the Constitution of this State or of the United States." *Code Ann.* § 24A-1301 (b). The youngster was released to his parents with the family being requested to appear October 12 for a pre-hearing interview.

Upon explanation to them of their son's legal rights at the pre-hearing interview the parents stated their desire to have legal representation. This interview was followed immediately by the detention hearing at which the juvenile court judge explained its nature, pointing out it was "to determine probable cause and possible detention." Although the parents indicated their financial ability and desire to hire an attorney, the court did not postpone the hearing for this purpose but completed the proceedings with a formal order committing the accused to a detention home. He further ordered the petition which is required under Ch. 24A-16 to be filed immediately. This would have resulted in the "adjudication hearing" being held "not be later than 10 days after the filing of the petition" under the provisions of *Code Ann.* § 24A-1701 because of the detention. Otherwise there is a thirty-day limitation. *Code Ann.* § 24A-1404 (b).

A petition for release on bail was filed on October 15 by the attorney hired by the parents. This bail hearing took place October 20 and after hearing evidence the accused was released to his parents on his own recognizance. The requisite petition for scheduling the dispositive hearing was filed October 18 with the trial scheduled for October 26. This would have been within the statutory time of 30 days of one who is not in detention but was re-scheduled upon the attorney's motion for continuance to November 23. The primary purpose for the postponement was a desire to have a psychological examination and time for defense preparation.

This adjudication hearing, referred to in the record as "Factual Investigation and Dispositional Phase," was a full

scale trial with the district attorney representing the State and with the retained attorney competently and capably representing the accused.

1. *Code Ann.* § 24A-1404 (c) provides that prior to the commencement of a detention hearing, the parties shall be informed of their right to counsel and to appointed counsel if they are needy persons. *Code Ann.* § 24A-2001 (a) provides: "[A] party is entitled to representation by legal counsel *at all stages of any proceedings alleging delinquency* . . . If a party appears without counsel, the court shall ascertain whether he knows of his right thereto and to be provided with counsel by the court if he is a needy person. *The court may continue the proceedings to enable a party to obtain counsel* . . ." (Emphasis supplied.)

The record shows the required advice concerning counsel was given to the child's parents but not until *just before* the detention hearing (during a pre-detention hearing interview) and again *during* the hearing itself. It also appears that on both occasions the parents stated they *did* want to retain and be represented by counsel. The statutory directive and constitutional right to counsel includes "reasonable time and opportunity to secure counsel." Powell v. Alabama, 287 U. S. 45 (53 SC 55, 77 LE 158, 84 ALR 527).

Appellee asserts the detention hearing is similar in nature to "the arrest stage" so that representation by a lawyer, even for adults who may be putative criminals, is not an essentiality. We disagree, particularly since the legislature here dealt separately with "taking into custody" (*Code Ann. Ch.* 24A-13), "detention" (*Code Ann. Ch.* 24A-14), and proceedings in connection with the "detention hearing." We submit the detention hearing serves a function analogous to a commitment hearing in the criminal process dealing with adults. The duty of a committing court "is simply to determine whether there is sufficient reason to suspect the guilt of the accused, to require him to appear and answer before the court competent to try him; and whenever such probable cause exists, it is the duty of the court to commit." *Code* § 27-407.

The new Juvenile Code obviously intends that procedural due process requirements established by In re Gault, 387 U. S. 1 (87 SC 1428, 18 LE2d 527) (1967) be observed. It also seeks nonconfinement, rehabilitation, and restoration to parental care wherever possible rather than punishment.

The legislature's recognition of the importance of the lawyer to the accused juvenile is shown in the fact that the Act refers to counsel in eight different portions of the Juvenile Court Code, §§ 24A-1404 (c); 24A-1701 (d); 24A-2001 (a, b); 24A-2201 (d); 24A-2501 (a, 1); 24A-3401 (a, 3); and 24A-3502 (b).

Prior to the passage in 1971 of the Juvenile Court Code this court in *Freeman v. Wilcox,* 119 Ga. App. 325, supra, had already recognized the importance of the juvenile's right to counsel at all adjudicative stages of juvenile proceedings.

The clear aim of the framers of our Juvenile Court Code was to emphasize non-confinement and fulfillment of parental responsibilities with rehabilitation of the accused but that if there is to be a formal hearing, whether it be detention or adjudicatory, then the child is entitled to counsel for such hearing.

2. In Coleman v. Alabama, 399 U. S. 1 (90 SC 1999, 26 LE2d 387), the United States Supreme Court ruled the preliminary or commitment hearing[3] to be a "critical stage" of the prosecution, so that if one was held, then the accused is entitled to be represented by counsel. It therefore remanded the matter to the trial court (as was done by the Alabama

---

[3]Two Georgia Supreme Court decisions rendered since Coleman v. Alabama have ruled the holding of a commitment hearing is not a requisite to a trial for commission of a felony. *Brown v. Holland,* 228 Ga. 628 (187 SE2d 246) and *Burston v. Caldwell,* 228 Ga. 795 (187 SE2d 900). These dealt with adults and therefore should not be construed as ruling that the detention hearing required by our Juvenile Court Code may be dispensed with, particularly in view of Kent v. United States, 383 U. S. 541 (86 SC 1045, 16 LE2d 84).

court—see Coleman v. State, 239 S. 223) so that a hearing might be held and a finding made as to whether beyond a reasonable doubt lack of counsel did or did not result in harm or prejudice to his fair trial rights at the jury trial. This court followed that ruling in *Mollins v. State*, 122 Ga. App. 865 (179 SE2d 111) and exercised its authority under *Code* § 6-1610 with remand of the case for determination as to whether or not such deprivation of counsel caused defendant to suffer prejudice at the trial of the case.

In the present instance an examination of the record shows no harm to have resulted from the lack of counsel at that stage. The child and his parents were not deprived of any right to make any available defense on the merits at the "adjudicatory hearing" and nothing developed at the detention hearing was used in any manner against the child at this trial. In fact our review of the record and of the transcripts of the four hearings (detention, bail, continuance, and dispositional) demonstrated that the court and its officers acted throughout in absolute good faith towards the appellant and his parents. The obvious courtesy and understanding thus exhibited are to be commended, especially in view of the physical and mental pressures which come to bear upon a child and his parents when trouble occurs and with it the specter of separation from family and deprivation of freedom. The failure of the trial judge to delay the detention hearing on his own motion upon learning of the desire for legal representation occurred only because of the innovations of our new Code and a misunderstanding of some of its requirements.

Accordingly, we hold there was no harmful error in the failure to have counsel in this case at the detention hearing.

3. Appellant attacks the order declaring delinquency on the ground that the findings of fact as entered do not recite that they were made "beyond a reasonable doubt." He contends this to be a requirement under the provisions of *Code Ann.* § 24A-2201 (b). This contention results from a misinterpretation as to what the order should state. This section

imposes upon the court the same standard of proof, which is "beyond a reasonable doubt," as is required for conviction in criminal cases involving adults when the court rules on delinquency or unruliness.[4] Where the court as here recited its findings of fact adversely to the juvenile, he is not required to use the words "beyond a reasonable doubt." In fact, as is pointed out by appellant's able counsel, this court had imposed this standard of proof well before passage of the Juvenile Court Code. *Thomas v. State,* 121 Ga. App. 91 (172 SE2d 860); *Kelly v. State,* 122 Ga. App. 185 (176 SE2d 468). The United States Supreme Court in the case of In re Winship, 397 U. S. 358 (90 SC 1068, 25 LE2d 368), had done likewise.[5] But our statute in legislatively decreeing such standard of proof in delinquency and unruliness hearings does not require the court to include this as an abracadabra statement in the adjudication order. Where, as was done here, there is a recital that the court finds the child committed the alleged acts, it can be assumed the judge complied with this statutory requirement as to standard of proof. *Marshall v. Russell,* 222 Ga. 490 (150 SE2d 667); *Milton v. Mitchell County Elec. &c. Assn.,* 64 Ga. App. 63 (12 SE2d 367).

---

[4] A decision that a child is deprived, or following a finding of delinquent or unruly conduct that he is in need of supervision, treatment or rehabilitation requires only "clear and convincing evidence." *Code Ann.* § 24A-2201 (c).

[5] In McKeiver v. Pennsylvania, 403 U. S. 528 (91 SC 1976, 29 LE2d 647) (1971), the Supreme Court ruled there is no constitutional right to a jury trial in juvenile court. District of Columbia Judge Orman W. Ketcham's article in 57 Cornell L. R. 561 notes: "This decision may well mark the court's final chapter on the adjudicative phase of juvenile justice." See also comments thereon by New York attorney John C. Coffee in his article dealing with juvenile police records entitled "Privacy v. Parens Patriae," 57 Cornell L. R. 571, he stating "McKeiver may herald a refocusing of attention on the prejudicial stages of juvenile justice."

4. Such presumption, however, would yield upon appeal if in fact the evidence adduced at the trial does not meet the "beyond a reasonable doubt standard." Thus we find appellant has enumerated as error such contention. He also argues that the evidence being circumstantial fails to meet the requirement of *Code* § 38-109 which says: "To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Our review of the transcript of the delinquency hearing confirms that the evidence satisfies these statutory standards of proof.

*Judgment affirmed. Eberhardt, P. J., and Deen, J., concur.*