49969. T. L. T. v. STATE OF GEORGIA.
49970. G. L. v. STATE OF GEORGIA.

CLARK, Judge.

In these independent appeals by two juveniles arising out of a consolidated trial our court is called upon to determine the extent to which principles of criminal law jurisprudence are to be applied to cases in the juvenile courts of our state.

Each of these 15-year-old boys was charged as being "delinquent" in having participated in an incident which arose out of a break-in of an unoccupied cabin on Lake Sinclair from which household goods approximating $200 were removed. Although these two did not actually take part in the unlawful entry they were present when the act was committed. Individual petitions were filed in the juvenile court seeking to have each declared a delinquent. As to each appellant the pertinent portion of the allegations read that "On October 4, 1973, at approximately 5:30 p.m., said youth was an accessory to the delinquent acts of breaking and entering and theft by taking" at the specified residence and that "said youths had full knowledge that the delinquent acts were taking place, and, although said youth did not take part in the actual breaking and entering and theft by taking, he did, with full knowledge, assist in the attempts to sell the property." An itemized list of the stolen property was recited but without stating market values either as to item or in gross. The petition further stated that "all items, except the half case of beer and the AM-FM radio,

were recovered. Also an undetermined amount of damage was done to the locks and doors of the residence broken into."

Court appointed defense counsel in fulfillment of his duties to his assigned clients attacked this petition by filing nineteen separate motions to dismiss. All were overruled by the circuit superior court judge acting as judge of the juvenile court of the county.

At the adjudicatory hearing four witnesses testified, the youngsters exercising their right to remain silent. Those witnesses were an accomplice of the appellants, the owner of the house which was broken into, the father of another accomplice, and the court's juvenile worker. Both youths were ruled delinquent.

The trial judge next proceeded with an in camera investigation concerning background, family conditions, and similar matters to assist him in reaching his decision for the subsequently scheduled dispositional trial. The attorney representing the delinquents participated in this investigational phase. The dispositional hearing was then postponed for two weeks to enable the court worker to ascertain the possibility of placing the youngsters with other members of the family. This was because the court's inquiry had developed the adolescents were already on probation in the juvenile court for other offenses and that the family environment for each boy was such that removal from their homes appeared to be the best hope for achieving the Juvenile Court Code's goal of rehabilitation.

At the dispositional hearing the court was informed that other members of the family were unable or unwilling to accept the responsibility. The court thereupon entered an order "committing each youth to the Georgia Department of Human Resources for care, supervision and planning." (R. 19). The instant appeals containing twelve enumerations of error followed.

1. We undertake first to deal with those enumerations based upon the nineteen separate motions filed by diligent counsel for the juveniles seeking dismissal of the petitions. All of these attacks were based upon technical criminal law doctrines. Some of these concerned omissions such as failure to plead market

values of the goods, name of owner, legal address of location and similar matters of specificity. Others were such as are essential to the validity of a criminal indictment based upon violation of a criminal statute.

Our opinion is that in the instant case the petition is sufficient. It meets the requirements of In re Gault, 387 U. S. 1, 33 (87 SC 1428, 18 LE2d 527) and *D. P. v. State of Ga.*, 129 Ga. App. 680 (200 SE2d 499). These authorities make clear that the petition "must set forth the alleged misconduct with particularity." But it is our opinion that this requirement is satisfied when the petition supplies definite details concerning delinquency even if it does not use the technical terminology of an indictment.

Although the petition does not have to be drafted with the exactitude of a criminal accusation, it must satisfy "due process." To meet this constitutional requirement the language must pass two tests: (1) it must contain sufficient factual details to inform the juvenile of the nature of the offense; and (2) it must provide data adequate to enable the accused to prepare his defense.

We recognize that the Act defines a delinquent act as one "designated a crime by the laws of Georgia." Code Ann. § 24A-401 (e). Nevertheless it is clear from the entire statute that the General Assembly sought to treat matters of juvenile delinquency as a class of conduct separate and distinct from conventional criminality. The language which this court used in *K. M. S. v. State of Ga.*, 129 Ga. App. 683 (200 SE2d 916) is applicable to the instant appeals. There at p. 684 our court explained thusly: "The juvenile court is a civil court, not a criminal court, and an adjudication of delinquency is not a conviction of a crime. Code Ann. § 24A-2401 (Ga. L. 1971, pp. 709, 736). The juvenile court cannot find anyone guilty of a crime. However, the juvenile court might well find that any act which is designated a crime under Georgia law is a delinquent act when committed by a juvenile. In order to do this, it is not necessary that the juvenile be 'considered or found guilty of a crime.' "

Accordingly, we find no merit in any of the enumerations attacking the overruling of the nineteen motions to dismiss.

2. We next consider those enumerations which

require a determination of the applicability to juvenile court trials of a specific criminal law principle. The one presented here is that dealing with the proof required to corroborate the testimony of an accomplice. In order to sustain a conviction of an adult based upon the testimony of an accomplice, two elements must be proven: (1) corroborating facts or circumstances must be shown to connect the defendant to the crime or lead to the inference that he is guilty and (2) such corroboration must be independent of the accomplice's testimony. *West v. State,* 232 Ga. 861, 864 (2) (209 SE2d 195); *Quaid v. State,* 132 Ga. App. 478, 481 (1) (208 SE2d 336).

An examination of the Juvenile Court Code shows that Ch. 24A-20 declares the rights of the accused juvenile. That chapter specifically provides that the juvenile has the right to counsel, the opportunity to introduce evidence, and to cross examine adverse witnesses. It is further stated therein that he need not be a witness against or otherwise incriminate himself and that evidence which would be constitutionally inadmissible shall not be used against him. Specifically it is stated that "a confession validly made by a child out of court is insufficient to support an adjudication of delinquency unless it is corroborated in whole or in part by other evidence." Code Ann. § 24A-2002 (b).

Additionally the statute requires that the court must find "on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent." Code Ann. § 24A-2201 (b).

In addition to these statutory declarations, this court has in the past sought direction from adult criminal precedents when considering the constitutional rights of juveniles. See, e.g., *T. K. v. State of Ga.,* 126 Ga. App. 269 (190 SE2d 588).

In fact, while denying the juvenile the right to trial by jury, our Supreme Court cited in *Robinson v. State,* 227 Ga. 140, 141 (179 SE2d 248) three United States Supreme Court decisions which "held that juveniles charged with offenses of a penal nature in juvenile courts were entitled to notice of hearing; right of counsel; privilege against self-incrimination; right of confrontation, cross examination, and review; and proof

of charges of a criminal nature beyond a reasonable doubt." Many of these rights are expressly legislated by our Juvenile Court Code.

From this statute and the decisions we conclude that the juvenile charged with "delinquency" is entitled by right to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial. We must not only furnish the ritual of justice, but we must provide its substance. To accomplish this, the trial must include such ingredients as the presumption of innocence, the requirement that if the conviction is based entirely upon circumstantial evidence then the proved facts shall exclude every other reasonable hypothesis save that of guilt, and the necessity of producing independent corroborative evidence to that of an accomplice for a finding of guilt when based upon the latter's testimony.

The instant transcript discloses that the trial judge as well as the prosecuting and defense attorneys were deeply concerned with the welfare of the two boys. This parens patriae philosophy which was concomitant with juvenile justice as formerly administered in the Children's Courts must yield to the modern doctrine exemplified by our 1971 Juvenile Court Code. This statute might well be called "The Juvenile's Bill of Rights."

Our examination of the transcript shows there is a lack of sufficient independent corroborative evidence to that of the accomplice to satisfy the required test. Accordingly, we must reverse.

3. Another assignment contends the trial court "erred in denying a motion for mistrial on the ground that the trial court by cross examining witnesses had become an advocate and not an impartial magistrate." The definitive statement on the duty of the trial judge to propound questions was set forth by the late Justice Beck[1] in *Gillis v. Bowman,* 132 Ga. 762 (1) (64 SE 1096)

---

[1] Marcus W. Beck (1860-1943) served 32 years on the Supreme Court bench during which he wrote more than 2,900 opinions. The memorial to him in 196 Ga. 879 notes:

in this language: "The trial judge has the right to propound a question or a series of questions to any witness for the purpose of developing fully the truth of the case; and the extent to which the examination conducted by the court shall go is a matter within his discretion. And a lengthy examination by the court of a witness called by either party will not be cause for a new trial, even though some of the questions propounded by the court were leading in character, unless the court, during the examination of the witness by himself, expresses or intimates an opinion on the facts of the case, or as to what has or has not been proved, or the examination takes such course as to become argumentative in character." See *Wilson v. State,* 229 Ga. 224 (190 SE2d 78) for a collection of citations which have approved this rule.

In the instance of a juvenile court judge it is most important that he exercise this right of cross examination so long as it does not constitute a manifest abuse of discretion nor go beyond the boundaries of becoming argumentative or expressing or intimating an opinion.

4. We find no harmful error in the final enumeration dealing with admission of testimony as to the question of permission by another accomplice to use his father's automobile.

5. In view of our sustaining the enumeration of error as set forth in Division 2, we find it necessary to reverse the court in both appeals.

*Judgments reversed. Pannell, P. J., and Quillian, J., concur.*

SUBMITTED JANUARY 9, 1975 — DECIDED FEBRUARY 7, 1975.

*George M. Stembridge, Jr.,* for appellants.
*Joseph H. Briley, District Attorney, Donald W. Huskins, Assistant District Attorney,* for appellee.

---

"No finer example of judicial courage could be found than his dissenting opinion in the *Frank* case, 141 Ga. 284, which seriously jeopardized his re-election in 1916."