A92A0152. IN THE INTEREST OF S. L. H., a child.
(422 SE2d 43)

ANDREWS, Judge.

The State appeals the order of the juvenile court granting the plea in bar of S. L. H., premised solely on alleged violation of the prohibitions of OCGA § 16-1-8 (a) (2).

Although no transcript of the proceedings at issue has been provided for our review, the transcript of the hearing on the plea in bar reveals that a juvenile petition alleging that S. L. H. was delinquent by virtue of having committed acts which, if done by an adult, would have been aggravated assault, armed robbery, and theft by taking of a motor vehicle. A first hearing was held and the case continued for a week because new counsel was appointed for S. L. H.

On May 31, 1991, at the second hearing, both sides announced ready; all witnesses were sworn; and the first witness took the stand. This witness had been charged with crimes in superior court for the same acts forming the basis of S. L. H's delinquency petition. The juvenile court therefore asked the witness only preliminary questions about his status and apparently determined that the witness' counsel should be present despite the fact that the witness had agreed to testify after being advised of his Fifth Amendment rights. However, because the witness could not tell the court if he had legal representation, the judge gave the State one hour to make this determination and contact counsel. A timely determination could not be made and the State understood the judge to rule that the witness would not be allowed to continue with his testimony despite the waiver of his Fifth Amendment rights. The State therefore moved for a continuance which the judge granted over the objection of S. L. H. The judge apparently stated the case was "continued or adjourned by the court to be reconvened" to allow the State to resolve the issue with the witness.

During the hearing on the plea in bar, the juvenile court labelled as "accurate" the State's summarization of the events at the original

proceeding, including the State's assertion that the witness was ready to testify, but the juvenile court "felt that we did need to speak to his counsel to be aware of what Fifth Amendment rights would be of the [witness]" and that "it was merely . . . a continuation of [the hearing at which the witness was called] and was not one where [the juvenile court] entered some type of adjudication." The juvenile court also described the events as "we stopped for awhile. Now we're picking it up again." But later the court indicated that, without the testimony of this witness, he did not believe the State had a case that day, since another individual also charged and represented by counsel had decided not to testify. The juvenile court concluded at the hearing on the motion that the State "asked for a continuance . . . either you needed to fold your tent and leave and say, we're going to dismiss it or you've got to ask for a continuance because you can't prove your case."

The delinquency hearing reconvened *39 days later,* on July 9, 1991, when the hearing on the plea in bar was held on S. L. H.'s claim that it was a violation of OCGA § 16-1-8 (a) (2) to hear the matter after it was continued. The juvenile court dismissed the case based on that section on the ground that it had been "terminated improperly."

It must first be determined whether OCGA § 16-1-8 (a) (2), which speaks of "prosecution," "crime," "conviction," and "acquittal," is applicable to juvenile proceedings.

OCGA § 15-11-38 (a) provides that "[a]n order of disposition or other adjudication in a proceeding under this article is not a conviction of a crime." Treatment and rehabilitation rather than punishment are the goals when delinquency is established. OCGA §§ 15-11-2 (7) and 15-11-1. "The juvenile court is a civil court, not a criminal court. . . . [O]ne under the prescribed age . . . is not prosecuted as a criminal, but is dealt with as the law provides for juveniles who violate the law." *K. M. S. v. State of Ga.,* 129 Ga. App. 683, 684 (200 SE2d 916) (1973).

The legislative history of OCGA § 16-1-8, part of which is contained in *Marchman v. State,* 234 Ga. 40, 42 (215 SE2d 467) (1975) reversing *Marchman v. State,* 132 Ga. App. 677, 681 (209 SE2d 88) (1974), gives no indication that it was to apply also to juvenile proceedings. See Ga. Code Ann. § 26-507, Committee Notes. See also the minutes of the meetings of the Criminal Law Study Committee formed in 1961, housed in the State Archives. "[I]t is clear from the entire statute that the General Assembly sought to treat matters of juvenile delinquency as a class of conduct separate and distinct from conventional criminality." *T. L. T. v. State of Ga.,* 133 Ga. App. 895, 897 (1) (212 SE2d 650) (1975).

However, as this court acknowledged in that case, "From [the Juvenile Court Code] and the decisions we conclude that the juvenile

charged with 'delinquency' is entitled *by right* to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial. We must not only furnish the ritual of justice, but we must provide its substance." Id. at 899. (Emphasis supplied.)

Relying on *T. L. T.*, this court in *In the Interest of J. H. M.*, 202 Ga. App. 79, 80 (413 SE2d 515) (1991) found that the evidentiary rule in OCGA § 24-4-8 applies to juvenile delinquency proceedings. This conclusion is buttressed by OCGA § 24-1-3, which provides that the rules of evidence apply in all courts and in all trials unless otherwise expressly provided by statute. This rationale is not available for the construction of OCGA § 16-1-8.

That section "sets out in detail when a second prosecution is barred. *These are matters of procedure.* They prevent an accused from being unduly harassed by or threatened by successive criminal prosecutions." (Emphasis supplied.) *State v. Estevez*, 232 Ga. 316, 319 (206 SE2d 475) (1974). "The 1968 Georgia Criminal Code has expanded the proscription of double jeopardy beyond that provided for in the United States and Georgia Constitutions." Id. at 317.

While the *constitutional* protections against double jeopardy apply to juvenile proceedings, the additional and expanded *statutory* protections afforded by OCGA § 16-1-8 (a) (2) do not rise to the level of "those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial." *T. L. T.*, supra at 898 (2). See generally *J. H. M.*, supra at 81. (Andrews, J., dissenting.)

*Judgment reversed. Carley, P. J., Pope and Johnson, JJ., concur. Sognier, C. J., Beasley and Cooper, JJ., concur specially. McMurray, P. J., and Birdsong, P. J., dissent.*

BEASLEY, Judge, concurring specially.

I agree with the reversal of the judgment. But I concur with Division 1 of Presiding Judge Birdsong's dissent. However, I do not concur in its Division 2, which relates to the application of the statute in this case.

1. First, a note about the dissent's Division 1. The court dismissed the petition after concluding that "the former prosecution . . . was terminated improperly." It is notable that the juvenile's "plea in bar," a device used in criminal proceedings, sought dismissal on the grounds of the Fifth Amendment to the United States Constitution and the statute, OCGA § 16-1-8 (a) (2). There was no pursuit of, nor ruling on, the federal constitutional claim, so the sole preliminary issue is whether this statute governing criminal procedure applies to proceedings pursuant to OCGA § 15-11-28 on petitions alleging delinquency under OCGA § 15-11-25 in juvenile court.

Although I surmised in *Smith v. State*, 173 Ga. App. 728, 732 (327 SE2d 839) (1985), Beasley, J., concurring specially, that because of the language in OCGA § 16-1-8 and its focus, it did not apply to juvenile delinquency proceedings, I agree with the further analysis and conclusion in this case that it does.

2. Applying OCGA § 16-1-8, the record shows that the proceeding on May 31 on the petition alleging delinquency was not "terminated improperly." It was a delay while the state undertook the court-required investigation into who, if anyone, represented the witness and to have that attorney counsel the witness on his Fifth Amendment rights before he testified. What occurred was akin to the circumstances in *Sessions v. State*, 131 Ga. App. 379 (206 SE2d 99) (1974). A continuance to afford counsel an opportunity to comply with the court's direction was held not to show a termination and attempt to retry the defendant so as to jeopardize her twice.

At the outset of the hearing on the "plea in bar," the court characterized the earlier proceeding to have been "either continued or adjourned by the Court to be reconvened . . . I think at that time I said I'd give the State the benefit of an adjournment and to reconvene the case if there is a distinction in those." After the assistant district attorney summarized the earlier proceeding, the court stated: "[W]e stopped for awhile. Now we're picking it up again." The court reiterated that what caused the cessation at that time was that it would not permit the witness to testify before first being advised by counsel regarding the ramifications of self-incrimination.

A trial court has discretion to grant a continuance. *Vining v. State*, 195 Ga. App. 816, 817 (2) (395 SE2d 17) (1990). This extends even after the movant has announced ready at trial, *Bennett v. State*, 186 Ga. App. 832 (2) (368 SE2d 789) (1988), and after issue is joined. *Whatley v. State*, 162 Ga. App. 106 (290 SE2d 316) (1982). The trial court was aware of this authority but apparently finally concluded that the continuance was a "termination." But the two are not the same. As in *Barner v. State*, 139 Ga. App. 50 (1) (227 SE2d 874) (1976), the juvenile proceeding was not "terminated" but merely continued until the precondition which the court sua sponte put on the witness' testimony could be met. Cf. *Paquin v. Town of Tyrone*, 261 Ga. 418 (405 SE2d 497) (1991). "A postponement, like a continuance, is not a 'termination' of the proceedings within the meaning of OCGA § 16-1-8 (a) where . . . the trial is resumed before the same jury" or, as here, delinquency proceeding resumed before the same judge. *Knight v. State*, 197 Ga. App. 250, 252 (5) (398 SE2d 202) (1990). *Lumley v. State*, 184 Ga. App. 898 (363 SE2d 69) (1987), is an example of cases terminated by the declaration of a mistrial, which is not the case here.

Even assuming the cessation of the hearing on May 31 consti-

tuted a "termination" within the contemplation of the statute, it was not terminated "improperly." What prompted it was the court's concern that the witness, who was present and willing to testify, might incriminate himself. The court refused to allow the state to proceed with the testimony of this witness until counsel could be produced to assure a waiver of Fifth Amendment privilege. The court put a precondition on this witness' testimony and, since the state was not obliged to have foreseen it, some time to meet it. The witness did not even know if he had an attorney, and the state was unable to determine immediately who it was, if he had one, and to obtain that person's presence. Allowing a delay so as to assure that a witness' constitutional right is protected is not an "improper termination" of the hearing. It was the court's concern, not the state's unpreparedness or inability to produce its witnesses, which occasioned the recess.

It is undisputed that the court had determined that it was not possible to proceed because the witness' attorney was not present. Assuring such counsel's presence was not the state's obligation so it cannot be charged with creating the continuance it was forced to seek because of the necessity for that witness' testimony. Although the absence of the witness' counsel may not fall within the category of proceedings terminated because of physical impossibility, OCGA § 16-1-8 (e) (2) (A), or any of the other four statutory instances of proper terminations because of necessity, the list is not exclusive. It merely specifies certain foreseen circumstances of termination which the legislature deemed not improper. Although both the State and the juvenile were ready to proceed, the court deemed it necessary to first assure that the witness was adequately counseled on his waiver of the right against self-incrimination. Given the interests of the public and of the juvenile to be served by proceeding to completion without interruption, such a reason is a valid one and takes a corresponding place alongside the four statutory instances.

The petition alleging delinquency should not have been dismissed.

I am authorized to state that Chief Judge Sognier and Judge Cooper join in this special concurrence.

BIRDSONG, Presiding Judge, dissenting.

I am gratified that five judges agree that double jeopardy rights given to adults likewise casts a mantle of protection over juveniles. While I do not applaud the manner in which the trial judge is reported to have conducted the initial proceedings, nevertheless for reasons hereinafter stated, I find that not only does double jeopardy apply but there clearly exists an inadequate record to reverse the trial judge.

1. We in dissent have found no appellate cases where OCGA § 16-

1-8 was applied to juvenile delinquency proceedings, and the pertinent subsection of the statute, which refers to "prosecution" and "crime" does not expressly address juvenile delinquency proceedings. OCGA § 16-1-8 (a). The legislature instead has expressly circumscribed the uses and effects of such proceedings, including the provision that "[a]n order of disposition or other adjudication in a proceeding under this article is not a conviction of a crime." OCGA § 15-11-38 (a). See also *K. M. S. v. State of Ga.*, 129 Ga. App. 683, 684 (200 SE2d 916). Treatment and rehabilitation rather than punishment are the goals when delinquency is established. OCGA §§ 15-11-2 (7); 15-11-1. As noted in *K. M. S.*, "[t]he juvenile court is a civil court, not a criminal court. . . . [O]ne under the prescribed age . . . is not prosecuted as a criminal, but is dealt with as the law provides for juveniles who violate the law." Id. at 684.

The legislative history of OCGA § 16-1-8, some of which is contained in the two *Marchman* opinions (*Marchman v. State*, 234 Ga. 40, 42 (215 SE2d 467) (reversing the Court of Appeals) and *Marchman v. State*, 132 Ga. App. 677, 681 (209 SE2d 88)) gives no indication that it was to apply also to juvenile proceedings. See Ga. Code Ann. § 26-507, Committee Notes. See also the minutes of the meetings of the Criminal Law Study Committee formed in 1961, which are housed in the State Archives. "[I]t is clear from the entire statute that the General Assembly sought to treat matters of juvenile delinquency as a class of conduct separate and distinct from conventional criminality." *T. L. T. v. State of Ga.*, 133 Ga. App. 895, 897 (1) (212 SE2d 650).

Nevertheless, this court acknowledged in *T. L. T.*: "From [the Juvenile Court Code] and the decisions we conclude that the juvenile charged with 'delinquency' is entitled *by right* to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial. We must not only furnish the ritual of justice, but we must provide its substance." (Emphasis supplied.) Id. at 899.

That was the foundation for the holding in *In the Interest of J. H. M.*, 202 Ga. App. 79, 80 (413 SE2d 515), that the evidentiary rule in OCGA § 24-4-8 applies to juvenile delinquency proceedings. Of course, this construction was aided by the applicability rule of OCGA § 24-1-3, which provides that the rules of evidence apply in all courts and in all trials unless otherwise expressly provided by statute, which type of statutory basis is not available for the construction of OCGA § 16-1-8. But the *fundamental jurisprudential principles* underlying the prohibition against procedural double jeopardy cannot be ignored.

OCGA § 16-1-8 "sets out in detail when a second prosecution is barred. These are matters of procedure. They prevent an accused from being unduly harassed by or threatened by successive criminal

prosecutions." *State v. Estevez*, 232 Ga. 316, 319 (206 SE2d 475). Although as a whole the Georgia statutory double jeopardy provisions have "expanded the proscription of double jeopardy beyond that provided for in the United States and [the pre-1976 and 1983] Georgia Constitutions" (*State v. Estevez*, supra at 317), the principle of protecting an accused, be that person a juvenile or an adult, from unwarranted government harassment is basic. See *Benton v. Maryland*, 395 U. S. 784 (89 SC 2056, 23 LE2d 707); *Oregon v. Kennedy*, 456 U. S. 667 (102 SC 2083, 72 LE2d 416). The Fifth Amendment (the Georgia constitutional right, which is given in 1983 Ga. Const., Art. I, Sec. I, Par. XVIII, was not invoked by appellant) protects life and liberty from double jeopardy to a degree which, compared with the Georgia statutes, is the minimum. Yet even the Fifth Amendment Double Jeopardy Clause applies to juvenile delinquency proceedings. *Breed v. Jones*, 421 U. S. 519 (95 SC 1779, 44 LE2d 346). The reason is that with respect to the potential consequences of a delinquency proceeding, such as the stigma inherent in a determination of delinquency, the deprivation of liberty for many years, and the anxiety, insecurity, and heavy personal strain and burdens of a juvenile's defense, "there is little to distinguish an adjudicatory hearing . . . from a traditional criminal prosecution." Id. at 530.

Due process is a fundamental common law jurisprudential principle, and it is this principle which is embodied in and implemented by OCGA § 16-1-8 (a) (2). It is a concept of fundamental fairness not to allow a second proceeding when the first was "improperly terminated," in the words of the statute. We agree with the United States Supreme Court that this type of double jeopardy prohibition represents a fundamental ideal of due process. *Benton*, supra at 794.

We therefore conclude that OCGA § 16-1-8 (a) (2), which prohibits re-prosecution when the former prosecution was "terminated improperly," applies to the proceedings on petitions asserting juvenile delinquency.

2. Although a transcript of the proceedings at issue has not been forwarded by the State for appellate review, the transcript of the hearing on appellant's plea in bar reveals the following facts: A juvenile petition alleged that S. L. H. committed aggravated assault, armed robbery, and theft by taking a motor vehicle. A first hearing was held and the case was continued for a week when new counsel was appointed for appellant. At the second hearing, on May 31, 1991, both sides announced ready; the judge swore all witnesses, and the first witness took the stand. The witness was found to be a co-defendant in superior court on the charges, and the juvenile judge apparently asked him only preliminary questions about his status. Thereafter, the juvenile judge appears to have determined the witness' counsel needed to be present notwithstanding the witness had agreed

to testify after being advised of his Fifth Amendment rights. The judge then gave the State one hour to determine if the witness had legal representation and, if so, to contact his counsel. The State could not contact the counsel. The State understood the judge to rule that the witness would not be allowed to continue with his testimony, waiver of Fifth Amendment rights notwithstanding. The State moved for a continuance which the judge granted over appellant's objection. The judge apparently stated the case was "continued or adjourned by the court to be reconvened" to allow the State to resolve the issue with the witness and continue with the case.

Appellee asserts in his appellate brief that after the initial continuance the State still was not prepared to proceed and requested another continuance which too was granted notwithstanding appellee's renewed objection.

During the hearing on the plea in bar, the juvenile court labelled as "accurate" the State's general summarization of the events at the original proceedings, including the State's assertion that the witness was ready to testify, but the juvenile court "felt that we did need to speak to his counsel to be aware of what Fifth Amendment rights would be of the co-defendant" and that "it was merely . . . a continuation of [the hearing at which the witness was called] and was not one where [the juvenile court] entered some type of adjudication." The juvenile court also characterized the questioned events as "we stopped for awhile. Now we're picking it up again." But later the juvenile court indicated that without the testimony of the witness, he did not believe the State had a case that day, as another co-defendant represented by counsel had decided not to testify in the case. The juvenile court concluded at the hearing on the motion that the State "asked for a continuance . . . either you needed to fold your tent and leave and say, we're going to dismiss it or you've got to ask for a continuance because you can't prove your case."

The proceeding in question reconvened *39 days later*, on July 9, 1991, when the hearing was held on the plea in bar filed by appellee on the grounds that it was double jeopardy to hear the matter after it was continued. The juvenile judge dismissed the case on the basis of the requirements of OCGA § 16-1-8 (a) (2), because it had been "terminated improperly." OCGA § 16-1-8 sets out in detail when a second prosecution is barred; this statute creates procedural prohibitions to successive criminal prosecutions that do not affect jurisdiction in any way. *Dorsey v. State*, 237 Ga. 876, 877-878 (230 SE2d 307).

(a) Jeopardy attaches for purposes of OCGA § 16-1-8 (a) (2) in a trial without jury after the first witness is sworn but before findings are rendered or after a guilty plea is accepted by a court. Id. Compare *White v. State*, 143 Ga. App. 315, 316 (2) (238 SE2d 247). Jeopardy attached in this case.

(b) OCGA § 16-1-8 (a) pertinently provides: "A prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution: . . . (2) Was *terminated improperly* . . . in a trial before a court without a jury, after the first witness was sworn but before findings were rendered by the trier of facts or after a plea of guilty was accepted by the court." (Emphasis supplied.) Therefore, this appeal of necessity raises an issue of whether the initial proceedings were terminated or, if terminated, whether they were terminated improperly.

*Although it is less than certain*, it appears from the transcript of the motion hearing that the proceedings in issue were interrupted by the juvenile court's granting of either a continuance or a temporary adjournment (the equivalent of a postponement), as requested by the State. And it lies in the juvenile court's discretion whether to grant such relief. *Whatley v. State*, 162 Ga. App. 106, 107 (1) (290 SE2d 316). Generally, "[a] postponement, like a continuance, is not a 'termination' of the proceedings within the meaning of OCGA § 16-1-8 (a) where . . . the trial is resumed before the same jury." *Knight v. State*, 197 Ga. App. 250, 252 (5) (398 SE2d 202). The same rule should apply when a trial or juvenile proceeding without jury is resumed before the same judge. But, if the State in a case *in which it has announced ready to proceed* thereafter elects to move for a continuance, postponement, temporary adjournment, recess, or other temporary cessation of proceedings (under whatever nomenclature such request is made) to attempt to obtain additional evidence, because if it were then required to proceed it would be unable to prove its case against the defendant, it would appear that the granting of such a request would in effect result in the *circumvention* of OCGA § 16-1-8. Accordingly, the juvenile court would *abuse its discretion* by the granting of such a temporary cessation order and the result of the failure to proceed with prosecution would constitute an improper termination within the meaning of OCGA § 16-1-8. See *Vining v. State*, 195 Ga. App. 816, 817 (2) (395 SE2d 17) (announcement of ready constitutes waiver of right to a continuance); *Bennett v. State*, 186 Ga. App. 832 (2) (368 SE2d 789); *Whatley v. State*, supra; see also *Phillips v. State*, 197 Ga. App. 491 (399 SE2d 234).

My colleagues, who join me in holding that children enjoy double jeopardy rights but who believe this particular juvenile was not deprived of his, assert that what occurred in this case was analogous to the circumstances of *Sessions v. State*, 131 Ga. App. 379 (206 SE2d 99). However, in *Sessions* the court ordered the State to file a motion (for continuance) for an opportunity to obtain a city ordinance; this court, based on the appellate record before it, construed the resulting delay of the case as a continuance in order to comply with the *direction* of the court to reduce the motion to writing and to obtain the

city ordinance. In this case, the hearing transcript when viewed in its totality shows that the juvenile court did not *direct* the State to find counsel; rather the State first attempted to determine if its witness was represented by counsel at all and, being unable to resolve timely whether counsel had been appointed, requested a continuance. Although at one point in the transcript the State asserts that "the witnesses were ready to testify, but [the juvenile court] felt that we did need to speak to his counsel to be aware of what Fifth Amendment rights would be of the co-defendant," it cannot be inferred from this statement that the court was *directing* counsel to be found. Rather with the time then allotted, the court at most was allowing the State an opportunity to find the witness' counsel, if any, so that the witness could make an informed election to the juvenile court's satisfaction whether to waive his Fifth Amendment rights. In this regard, it is our duty on appeal to construe the facts and all reasonable inferences to be drawn therefrom to support the judgment below (see generally *Grant v. State*, 195 Ga. App. 463 (1) (393 SE2d 737)), and this rule applies equally when the judgment below is unfavorable to the State. Review of the hearing transcript reveals the juvenile court found that the State requested the continuance because it knew appellant would be acquitted if it proceeded that day. In this regard, the juvenile court observed that "the situation we had the other day was that the State could not proceed with the case at that time. They would not have had the evidence to do it. That's my . . . view of what the situation was. They couldn't proceed. . . . They would have lost the case." Thereafter, the hearing transcript reflects the State's concession that the witness "was willing to testify; however, it was held that he would not be allowed to and *that's whenever the issue of the continuance arose.*" (Emphasis supplied.) Subsequently, the juvenile court stated in the hearing transcript that "without [the witness' testimony] you all did not have a case that day. *That's my basis*, I think, *why you asked for a continuance* because there was another alleged . . . co-defendant . . . who had counsel who decided not to testify, isn't that right?" (Emphasis supplied.) The State's attorney thereupon responded, "right." Thus, the hearing transcript reflects that the State, if not agreeing with, at least acquiesced to the juvenile court's finding that the *basis* for the continuance was that the State could not prove its case. The trial judge also observed that "but for the granting of that continuance, this young man would have been acquitted that day. Now, he might have been acquitted . . . because the Judge refused to let a witness who was willing to testify, *but nevertheless he would have been acquitted.*" (Emphasis supplied.) And, the State then conceded on the record that it had made a "judgment call" in requesting the continuance, and that "the State was not ready to proceed based on . . . the evidence." In view of the state of the record,

we cannot construe the court's decision to grant a continuance or adjournment, as do certain of my colleagues, as being prompted as in *Sessions*, supra, in order "to afford [defendant's] counsel an opportunity to comply with the court's direction" to obtain the presence of witness' counsel in the courtroom, particularly when at that time it was unknown whether the witness even had been appointed such a counsel. Rather, *the record before us contains an unrefuted finding, conceded to or at least acquiesced in by the State, that the request for continuance was made based on a judgment call by the prosecutor motivated by her knowledge that the State had insufficient evidence to then proceed to trial without a resulting acquittal of appellant.*

Additionally, *based on the posture of the hearing transcript,* we in dissent cannot accept any tacit suggestion by the State that the trial court may have found the termination in the proceedings was *necessary,* within the meaning of OCGA § 16-1-8 (e) (2) (A) because it was physically impossible to proceed with the trial. *First,* the transcript reflects that it was not physically impossible to proceed with trial. The State asserted repeatedly in the hearing that it had announced ready, that its witnesses were ready to proceed, and that the witness in question was willing to testify but was prevented from doing so by the trial court. The State was not physically precluded from proceeding to trial that day by the juvenile court; rather, the State was merely self-precluded from electing to proceed to trial that day without suffering the result of an acquittal of appellant. Thus, by the State's own concession in the record it made a "judgment call" to request continuance. *Secondly,* in order to preclude termination of the proceedings from being improper under OCGA § 16-1-8 (e) (2), the trial court must *find* that the termination is necessary because it is physically impossible to proceed with trial. Review of the hearing transcript reflects that no such finding was made by the trial court at the hearing; as we do not have the transcript of the earlier proceeding before us, we can only speculate whether such a finding was there made. However, the hearing transcript reflects that the juvenile court did not believe that termination was necessary because of a physical impossibility to proceed to trial, as the trial court expressly concluded that this provision of the statute was inapplicable in the case at bar. In this regard, the hearing transcript reflects the following colloquy between the court and defense counsel. "[DEFENSE COUNSEL] Your honor, they did not have sufficient admissible evidence to prove the case after it was called in the first. . . . [THE COURT] That's right. It wasn't a continuance based upon convenience or some such thing like that. [DEFENSE COUNSEL] Or physical impossibility which the statute provides for. [THE COURT] *Yeah,* based upon not having enough evidence — not having that day evidence to go for-

ward." (Emphasis supplied.) The prosecutor subsequently stated: "I *don't* think that there may *not* have been a *necessity* where I had a right to a continuance; however, one was granted and I don't think that error was made in that one was granted." (Emphasis supplied.) *Thus, it appears that not even the State believed termination of the proceedings could be based on a finding of necessity in this instance.* Because no physical impossibility to proceed to trial existed and because the record discloses no finding of necessity by the juvenile court, we cannot conclude that the provisions of OCGA § 16-1-8 (e) (2) (A) could be dispositive of this case.

In this case, the State in its notice of appeal provided that the "transcript of evidence and proceedings will be filed for inclusion in the record on appeal." Thereafter, the State elected only to file for inclusion in the record the transcript of the hearing on the motion in bar; no transcript of the proceedings in issue was included for our consideration. *Without the benefit of the transcript of the proceedings in question, we are unable to ascertain precisely what transpired at the proceedings in question.* Moreover, at the motion hearing, court and counsel were not in total agreement regarding their recollection of what had previously transpired. Thus, without the transcript of the proceedings itself, we are unable to ascertain whether there exists some evidence to support the trial court's factfindings at the motion hearing, and whether the State in fact elected, after announcing ready for trial, to move for continuance to obtain additional evidence because it could not then prove its case. The burden to file a transcript, unlike the record, is on appellant. *Dunbar v. Green*, 232 Ga. 188 (205 SE2d 854). And appellant has not filed a timely motion to supplement the record. When the enumerations of error are such, as in this case, as to require our review of the evidence and appellant fails to include a transcript on appeal, the enumeration must be deemed meritless and the judgment or ruling of the trial court affirmed. *Smith v. State*, 160 Ga. App. 26 (1) (285 SE2d 749); see *Johnson v. State*, 261 Ga. 678, 679 (2) (409 SE2d 500). It is not an appellate court's function to prosecute an appeal on an appellant's behalf; under these circumstances, we must rely on the presumption of regularity in a court of competent jurisdiction and assume the evidence was sufficient to support the trial court's ruling. *Acker v. Jenkins*, 178 Ga. App. 393, 394 (1) (343 SE2d 160).

We in dissent believe that our clear duty on appeal is to *reasonably* construe the facts and inferences to be drawn therefrom, as to how and why the continuance occurred, to support the judgment. *Grant*, supra. What little facts exist from the recollection of the parties, giving particular deference to the rulings of the trial judge, tend to support his legal ruling. However, because the initial transcript of the proceedings has not been provided to this court, we would be

compelled in any event, to support the trial court and affirm judgment. *Smith*, supra; see *Dunbar*, supra.

Accordingly, I respectfully dissent. I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED JULY 16, 1992 —
RECONSIDERATION DENIED JULY 31, 1992 — 

*Harry N. Gordon, District Attorney, Audrey A. Butler, Assistant District Attorney*, for appellant.

*Shoemaker & Associates, Curtis G. Shoemaker*, for appellee.

