604 A.2d 64

**$3,417.46 U.S. MONEY, et al.**

v.

**Edwin C. KINNAMON, Clerk, et al.**

No. 46, Sept. Term, 1991.

Court of Appeals of Maryland.

April 8, 1992.

Anne C. Ogletree, Denton (Robert· J. Greenleaf, Cambridge) both on brief, for petitioners.

Leo W. Ottey, Jr., Asst. Atty. Gen., Columbia (Richard M. Matthews, City Atty., Cambridge) both on brief, for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

This case involves a civil forfeiture proceeding filed pursuant to the provisions of Maryland Code (1992 Repl.Vol.), Article 27, § 297. Subsection (b)(6) authorizes the seizure of property which is subject to forfeiture, including

"[a]ll money ... which [has] been used or intended for use in connection with the illegal ... distribution, dispensing or possession of controlled dangerous substances or controlled paraphernalia."

This subsection further provides *inter alia* that all money

"found in close proximity to contraband controlled dangerous substances [or] controlled paraphernalia ... [is] presumed to be forfeitable under this paragraph."

The burden of proof "is upon a claimant of the property to rebut this presumption." § 297(b)(6).

### I.

On March 22, 1990, in the District Court of Maryland, sitting in Dorchester County, the City of Cambridge (the City) filed a complaint for the forfeiture of $3,417.46. The complaint recited that the money was seized on May 24, 1989, in the course of executing a search warrant at the Cambridge residence of Gloria Hagan. It averred that the money was in Hagan's possession and was seized in connection with her arrest and subsequent conviction for possession of a controlled dangerous substance with intent to distribute. Specifically, the complaint alleged that the police found "25 grams of cocaine alongside of [Hagan's] purse which contained seized property and a small amount of cocaine."

At the forfeiture hearing held on June 27, 1990, evidence was adduced by the City that the police entered the Hagan residence on May 24, 1989, at 2:23 p.m. The premises was a small, one-room apartment; it was occupied by Hagan and

her companion, Frederick Stafford. As the police entered, they saw Stafford and Hagan next to a kitchen table. Stafford removed a plate containing a white substance from the table and unsuccessfully attempted to flush it from the plate; it contained crack cocaine. The police recovered items of paraphernalia from the table, containing cocaine residue, *i.e.*, a glass pitcher which was wet from pouring liquid cocaine onto the plate. The pitcher was still warm to the touch. The police also recovered two bags of cocaine and a number of small ziplock bags. A search of Hagan's person revealed two chunks of crack cocaine in her pocket. On the floor beside her was her purse; it contained $3,307.36 in intermixed bills of small denominations, not bundled or sorted in any particular fashion. The purse also held four Social Security checks amounting to $776.00.

The evidence disclosed that Hagan was forty years of age, was mentally retarded, and had suffered a stroke in 1987 that left her partially paralyzed. She was receiving Social Security and Supplemental Security Income benefits as a result of her disability from the federal government. Hagan's initial Social Security check was in the amount of $4,376.00. It was paid to her on October 7, 1988, and represented a lump-sum payment for the benefits to which she was entitled for the period between her application for benefits and the award. The evidence showed that Hagan deposited $1,000.00 of the check in a new account at a local bank. Thereafter, she received two additional checks each month in the amount of $374 during 1988, and $388 during 1989.

Hagan testified that on the day she received her lump-sum payment from Social Security, she "had five thousand in [her] pocket." She further told the court that each month when she received her Social Security checks, "I would go to the bank and they ca[sh it] ... and I put it in my pocketbook." When asked whether she would obtain cash for all of the check or just part of it, she responded, "All of it." Asked why she kept so much money in her pocketbook, Hagan responded: "I just put it in my pocket-

book and plus ... I was supposed to go away ... this week." She testified that she was planning to visit her aunt and uncle in Ohio when she was arrested. She denied ever having sold drugs; she also denied that any of the money that was in her purse came from drug sales made by Stafford. Hagan said that Stafford gave her money to pay her bills and that she paid them. She testified that some of the money in her purse could have been money that Stafford had given to her.

The evidence showed that Hagan was convicted of violating various provisions of the controlled dangerous substances laws contained in Article 27, namely, possessing controlled dangerous substances in sufficient quantity to indicate an intent to distribute; possession of a controlled dangerous substance; and possession of illegal drug paraphernalia with intent to use to manufacture or store controlled dangerous substances. The evidence also disclosed that Stafford was convicted of drug violations and that the police had seized over $6,300.00 from his person and vehicle at the time of his arrest in the Hagan residence.

The District Court (Norton, J.) found as a fact that the money in Hagan's purse was in close proximity to controlled dangerous substances and paraphernalia, which included the crack cocaine found in Hagan's pocket. The court determined that a rebuttable presumption of forfeitability arose from that finding, namely, that the money in Hagan's purse was used, or intended for use, in connection with the illegal possession or distribution of controlled dangerous substances or controlled drug paraphernalia. As a result, it held that, under the statute, the burden was upon Hagan to overcome the presumption by a preponderance of the evidence. After reviewing the evidence, the court forfeited $1,000 of the money found in Hagan's purse. It said:

"I believe that a portion of the monies was probably intended by her to buy cocaine and to buy controlled dangerous substances. I don't believe that all of the monies probably were...."

"That leaves the court in a dilemma of how do I quantify what I find.... I believe there was an amount of activity on her part, that perhaps part of the currency may have been involved but I can't believe that the entire amount of currency was involved....

"... $1000.00 of the money ... in my mind at least represents some portion of her intent to buy drugs and sell drugs.... I also believe that at least the balance of that was basically money she had socked away from Social Security and wasn't doing anything other than rotting away in her purse."

In so concluding, the court found that the money in Hagan's purse originated in large part from her Social Security checks and that some of the money may have been interchanged from the time of its original receipt and replaced with other money from drug sales that may have occurred. In determining the amount of money which the court deemed properly subject to forfeiture, it considered the amount of drugs found in the apartment; their location within the apartment; and the amount of drugs found on Hagan's person, as well as the existence of other money, apparently belonging to Stafford.

The City filed an "on-the-record" appeal to the Circuit Court for Dorchester County. That court (Warren, J.) reversed the District Court, holding that all of the money found in Hagan's purse should have been forfeited to the City. It agreed with the District Court that the money was found in close proximity to controlled dangerous substances. It said that from this finding flowed the statutory presumption of proscribed use, which, if unrebutted, was sufficient in itself to require forfeiture. The court opined that Hagan "produced no evidence as to the use to which the money had been put or to which she intended to put it." In this regard, the court stated that evidence adduced by Hagan "showing where the money came from, standing alone, proves nothing as to what it is being used for, or as to the use for which it is intended." The court said that Hagan produced no evidence of an "established pattern"

with respect to the use to which the cash from her Social Security checks "was customarily or habitually put." The court further observed that Hagan's own testimony revealed that she did not use her money to pay her rent or living expenses as those items were paid by Stafford from his own money. After further analyzing the transcript of the hearing in the District Court, and considering the provisions of the forfeiture statute, the court reasoned:

> "Simply put, Ms. Hagan presented no evidence as to the question of *use*. If the trial court concluded that she had overcome the presumption of proscribed use, it was mistaken. Evidence of *source*, standing alone, proving nothing as to *use*, cannot overcome a presumption of proscribed *use*.
>
> . . . .
>
> "The decision of the trial court here can only be read as concluding (1) that the presumption of proscribed use was overcome by the claimant, or (2) that the 'innocent source' from which the money was derived rendered it exempt from forfeiture. In either case, the trial court was in error."

(Emphasis in original.)

Hagan filed a petition for a writ of certiorari pursuant to Maryland Code (1989), §§ 12–305 and 12–307 of the Courts and Judicial Proceedings Article; her petition, which we granted, presented the issue whether "the innocent source of seized money coupled with proof of a habit of non-use (*i.e.* that Ms. Hagan's money 'wasn't doing anything other than rotting in her purse') created substantial evidence negating the presumption that it was 'money . . . which has been used or is intended for use [for a purpose prohibited by § 297(b)(6) ].' "

### III.

It is clear from the record that the District Court at no time took the position, as suggested by the City, that because the money derived from the Social Security checks

constituted an "innocent source," the money is exempt from forfeiture. On the contrary, Judge Norton plainly noted that because of the close proximity of the money to the drugs, a rebuttable presumption arose under the statute that the money was used, or intended for use, in connection with the proscribed illegal activities. The court said, and Hagan acknowledged, that the burden was upon her to rebut the presumption. The case was tried on that premise. Indeed, the parties agreed that the presumption was of the so-called Morgan type [1] and thus required the claimant to carry the burden of production of evidence, as well as the burden of persuasion. *See Ewachiw v. Director of Finance,* 70 Md.App. 58, 67, 519 A.2d 1327, *cert. denied sub nom. Ewachiw v. Benton,* 309 Md. 605, 525 A.2d 1075 (1987), a case involving the statutory presumption of forfeitability of money under § 297(b)(6), where the court remarked that the statute casts the burden of ultimate persuasion upon the owner of the property subject to forfeiture to provide an explanation for the presence of cash "which is *not only theoretically believable but* which is *actually believed* by the fact finder." (Emphasis in original.) Hagan does not, therefore, fault the City's view that to rebut the presumption she must do more than merely produce evidence of possible intended uses of the money. Instead, she fully recognizes that she must, by a preponderance of the evidence, bear the burden of persuading the trier of fact of the truth of her alleged intended use of the money seized from her purse.

---

1. In *Montgomery Co. Fire Bd. v. Fisher,* 298 Md. 245, 257, 468 A.2d 625 (1983), we noted that a Morgan-type presumption imposes upon the opponent of the presumption more than merely coming forward with evidence that might support a finding in his favor. Rather, we said that

"the opponent has to convince the trier of fact that the nonexistence of the presumed fact is more probable than its existence. Thus, the Morgan view requires that the opponent of the presumption carry both burdens or suffer defeat. Under this view, the presumption never drops out but always remains in the case as affirmative evidence."

Maryland Rule 1386, entitled "Scope of Review," governs "on-the-record" appeals from the District Court to a circuit court. It directs that the circuit court

"will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

■ In *Ryan v. Thurston*, 276 Md. 390, 391–92, 347 A.2d 834 (1975), we analogized the scope of review of a circuit court under Maryland Rule 1386 to that possessed by this Court and the Court of Special Appeals under former Maryland Rules 886 and 1086 (the provisions of both now being contained in Maryland Rule 8–131(c)). *See Housing Comm'n v. Lacey*, 322 Md. 56, 59, 585 A.2d 219 (1991). These rules have been consistently interpreted in our cases to require that appellate courts accept and be bound by findings of fact of the lower court unless they are clearly erroneous. And as we said in *Ryan v. Thurston, supra,* 276 Md. at 392, 347 A.2d 834, "[t]he appellate court must consider evidence produced at the trial in a light most favorable to the prevailing party and if substantial evidence was presented to support the trial court's determination, it is not clearly erroneous and cannot be disturbed." Moreover, as we reiterated in *Housing Comm'n v. Lacey, supra,* 322 Md. at 59–60, 585 A.2d 219, the trial court is not only the judge of a witness's credibility but also of the weight to be `attached to the evidence. It is thus plain that the appellate court should not substitute its judgment for that of the trial court on its findings of fact but will only determine whether those findings are clearly erroneous in light of the total evidence. *See Kowell Ford, Inc. v. Doolan*, 283 Md. 579, 584, 391 A.2d 840 (1978).

The trial judge found from the evidence that Hagan "intended to possess, did possess, would possess and would use money to possess controlled dangerous substances." He also found that not all of the money found in her purse was intended for use in connection with the acquisition and

sale of drugs. Specifically, the District Court found that "a portion of the monies was probably intended by [Hagan] to buy cocaine and to buy controlled dangerous substances but not all of it." He found that the money in Hagan's purse constituted the greatest part of her assets; that part of it came from cashing her Social Security checks; that she put that money in her purse and spent little of it; and that this was her habitual course of conduct. The District Court observed Hagan's mental impairment during her testimony, assessed her credibility with respect to her claimed "habit" of cashing her checks and "socking away" or "hoarding" the money in her purse as an "intended use" within the contemplation of the statute. That Judge Norton believed Hagan's testimony, in part, is evident from his determination to forfeit only $1,000.00, rather than the entire amount seized from her purse. In this regard, the court's determination did not encompass any factual finding concerning her alleged intent to use the money on a trip to Ohio; from this, we glean that Judge Norton did not credit her testimony of an intent to use the money for this purpose.

The use or intended use that Hagan had for the money seized from her purse is, of course, a factual determination to be made solely by the trial court. That there was an abundance of illegal drugs in Hagan's apartment at the time of her arrest in close proximity to large sums of money is clear from the record. There was evidence before the trial court, including the statutory presumption, from which it might have concluded that all of Hagan's money was forfeitable. There was also evidence which, if believed by the trier of fact, showed that not all of the money in Hagan's purse was used or intended for use in connection with illegal drug activities. In finding that Hagan only used or intended to use part of the money found in her purse to buy and sell drugs, the trial court considered the evidence that she was never seen using or selling drugs. The trial judge, fully cognizant of the evidentiary force of the statutory presumption in the City's favor, found as a fact that part of the money had a lawful and benign use,

*i.e.,* that Hagan, for whatever reason, simply hoarded this money in her purse, thereby rebutting the statutory presumption by a preponderance of the evidence.

Viewing the record in the light most favorable to Hagan, we conclude that the district judge fully understood the governing law and that the circuit court erred in holding that his judgment on the evidence was clearly erroneous. As we have said, it was for the trial court to evaluate Hagan's credibility; and he was persuaded, by a preponderance of the evidence, that allowing all but $1,000 to "rot" in her purse was a lawful use to which this mentally and physically disabled woman intended to put the money.

Accordingly, in the circumstances of this case, it was error to set aside the judgment of the District Court. Md. Rule 1386.

JUDGMENT OF THE CIRCUIT COURT FOR DORCES- TER COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER A JUDGMENT IN FAVOR OF THE CITY OF CAMBRIDGE IN THE AMOUNT OF $1,000.00. BALANCE OF THE SEIZED CURRENCY TO BE REFUNDED TO GLORIA DELORES HAGAN; COSTS TO BE PAID BY THE CITY OF CAMBRIDGE.