879 A.2d 717

**In re ANTHONY W.**

**No. 136, Sept. Term, 2004.**

Court of Appeals of Maryland.

Aug. 1, 2005.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for petitioner.

Michael R. Braudes, Asst. Public Defender (Nancy S. Forster, Public Defender, Katherine P. Rasin, Asst. Public Defender, on brief), for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

GREENE, J.

Anthony W., respondent, was charged in juvenile court with the malicious destruction of property.[1] During the trial, re-

---

1. The malicious destruction of property offense codified in Md.Code (2002), § 6–301(a), (b) and (c) of the Crim. Law Article provides:

spondent moved for dismissal, alleging that the State's case consisted only of the testimony of two accomplices that was not corroborated in any manner. The motion to dismiss was denied. On November 14, 2002, the Circuit Court for Frederick County, sitting as a juvenile court, found that Anthony W. was involved in the delinquent act. Anthony W. filed a timely appeal to the Court of Special Appeals and the intermediate appellate court reversed the juvenile court.

We granted the State's petition for writ of certiorari, which contains two questions combined into one. For purposes of clarity, we separate and reword the two questions:

1. Did the Court of Special Appeals err in holding that the accomplice corroboration rule applicable in criminal cases applies in juvenile cases?

2. Did the Court of Special Appeals improperly hold that the evidence was insufficient to find that Anthony W. committed the act of malicious destruction of property because there was no corroboration of the testimony of the two alleged accomplices?

We hold that the common law rule, applicable in criminal proceedings, requiring independent evidence to corroborate the testimony of an accomplice, also applies in juvenile cases. As to the second question, however, we reverse the Court of Special Appeals. We hold that the trial judge was not clearly erroneous in finding that the State's two witnesses were not accomplices whose testimony needed to be corroborated.

---

"(a) *Prohibited.* A person may not willfully and maliciously destroy, injure, or deface the real or personal property of another.

(b) *Penalty—Property damage of at least $500.* A person who, in violation of this section, causes damage of at least $500 to the property is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $2,500 or both.

(c) *Penalty—Property damage of less than $500.* A person who, in violation of this section, causes damage of less than $500 to the property is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 60 days or a fine not exceeding $500 or both."

## FACTS AND PROCEDURAL HISTORY

Sometime during the late evening of May 10 and early morning of May 11, 2002, Jose Gonzales, Keith Steers, and Anthony W. were driving around the area of Kemptown Church Road in Frederick County with no particular destination in mind. According to the testimony of Keith Steers, the front seat passenger and one of two witnesses for the State, Anthony W. told Jose Gonzales, the driver, to stop the car in the parking lot of Kemptown Elementary School. After Gonzales stopped the car, Anthony W. exited the car from the back seat and went toward a school bus. Shortly thereafter, Steers and Gonzales also got out of the car and went to the rear of the school bus, which was about fifteen feet from the car. Steers testified that the respondent entered the bus by breaking the glass in the front door of the bus. According to Steers, Anthony W. smashed a number of windows with a fire extinguisher stored in the bus and sprayed the interior. Steers and Gonzales testified that they entered the bus shortly after Anthony W. and attempted to stop him from breaking additional windows. Neither Steers nor Gonzales broke any windows. They did, however, remove a box of road flares as all three left the bus.

On cross-examination, Steers testified that he had been charged with misdemeanor theft for taking the box of flares from the bus, and that the charge was stetted [2] in exchange for his testimony against the respondent.

In a series of questions, the defense attorney for Anthony W. asked Steers:

Q. Now you say that your case was placed on the stet docket?

A. Yes sir.

---

2. Md. Rule 4–248. "On motion of the State's Attorney, the court may indefinitely postpone trial of a charge by making the charge 'stet' on the docket."

Q. And was that, what was the agreement that your case be placed on the stet docket, Mr. Steers? Did you make an agreement with the, with the State's Attorney's Office?

A. That I stay out of trouble.

Q. Did you also make an agreement that if your case, your theft case was placed on the stet docket, that you would testify against—

A. Oh—

Q. —Tony.

A. Yes sir.

Q. Now at the time that your case was . . . and you, you said you were charged with misdemeanor theft?

A. Yes sir.

Q. And that's what was placed on the stet, stet docket?

A. Yes sir.

Q. So, and do you know what the penalty for misdemeanor theft is?

A. It's a $5000 fine and up to a year and a half in jail, I think.

Q. All right. So you knew that by testifying against, against Tony, you could avoid being prosecuted and potentially facing that penalty and jail. Is that correct?

A. Yes sir.

The State's second witness, Gonzales, after being advised of his rights, declined to testify until the State entered a *"nol pros* with prejudice" [3] on his theft charge, which also stemmed

---

3. "A *nolle prosequi* is an official declaration by the State, announcing that it will not pursue the charges in a particular charging document. The *nolle prosequi* essentially wipes out the charges pending against the defendant and precludes the State from prosecuting the defendant under the charging document that was *nolle prossed.*" *In re Darren M.,* 358 Md. 104, 112, 747 A.2d 612, 616 (2000) (citations omitted). *See also,* Md. Rule 4–247, which provides:

(a) Disposition by *Nolle Prosequi.* The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a *nolle prosequi* on the record in open court. The defendant need not be present in court when the *nolle prosequi* is entered, but in that

from the taking of the box of flares from the bus. After a recess, the State agreed to either enter a *nolle prosequi* with prejudice or dismiss the case with prejudice.

According to Gonzales, he was "just driving around cuz . . . there was nothing to do," when they all decided to drive down the road past the elementary school. After parking on the left-hand side of the building where the school buses were parked, he then testified that the following occurred:

> Tony got out of the car and just tried to find a way into the bus. We circled the bus around one time to see if there was [sic] any windows open. And then he got through the [passenger] door [of the bus] like I said at the first time. He'd broken in from the inside somehow. I don't know how he did it.

* * * * * *

> [Anthony W.] [g]ot on the bus, started looking around, went up and down the aisle found a fire extinguisher, looked at it for a minute, then apparently brought it back outside the emergency exit in the back of the bus. He bashed out the windows with his foot at the time. And then had opened after he'd broken the glass and then went inside with the fire extinguisher and just squirted all of the inside of it, and then just randomly started bashing out windows. And at the time I was in the driver seat of my car saying what are you doing? Get out. Don't do that. You know, someone's gonna come and find out. . . . I was trying to get him off the bus, telling him not to do that, and he kept doing that. So at the time I was saying this from my car. Then I

event the clerk shall send notice to the defendant, if the defendant's whereabouts are known, and to the defendant's attorney of record. (b) Effect of *Nolle Prosequi.* When a *nolle prosequi* has been entered on a charge, any conditions of pretrial release on that charge are terminated, and any bail bond posted for the defendant on that charge shall be released. The clerk shall take the action necessary to recall or revoke any outstanding warrant or detainer that could lead to the arrest or detention of the defendant because of that charge.

got onto the bus and tried to grab a hold of him. I told him to get off the bus.

* * * * * *

Keith was in the ... passenger side ... [n]ext to me. We were both telling him to get off the bus. Get off the bus. And Keith was telling me constantly what is he doing. Tell him to get off the bus. Get him off the bus. We, at the same time, we were just telling him to get off the bus. He wouldn't listen. So Keith got on the bus and tried to pull him off. He wouldn't do it so Keith got back off the bus. Then I tried to get him off. He wouldn't budge. And then I got off the bus.

Gonzales admitted that while he and Steers were on the bus he stole the box of flares and that Steers took one from the box.

At the conclusion of the State's case, respondent moved for dismissal, alleging that the State's case consisted of the testimony of two accomplices that was not corroborated in any manner. The juvenile court judge denied the motion. The court found that the State's two witnesses were not accomplices for the purposes of the accomplice corroboration rule. In a written order issued the day of the adjudicatory hearing, the court stated that the State had proven "beyond a reasonable doubt" that Anthony W. was involved as alleged for the charge of malicious destruction of property. On November 14, 2002, respondent was placed on probation and ordered to pay restitution in the amount of $250.00.

In a reported opinion, the Court of Special Appeals reversed the judgment of the Circuit Court. *In re Anthony W.*, 159 Md.App. 514, 859 A.2d 679 (2004). The majority reasoned that,

they [the three youths] drove to the scene and drove around looking for open windows on a bus, from which one may reasonably infer they intended to enter. Finding no easy access, [Anthony W.] broke the door of a bus and entered. The alleged accomplices voiced no objections until the window breaking ensued. The offense was committed when the

door was broken open; the window breaking was not a separate offense, it was an acceleration of the illegal activity in which all three were engaged.

*In re Anthony W.*, 159 Md.App. at 519, 859 A.2d at 682. In conclusion, the Court of Special Appeals stated that, " 'as a matter of sound policy,' the rule requiring corroboration of accomplice testimony applies in juvenile proceedings." *Id.* The Court of Special Appeals then held that Anthony W. was wrongly adjudicated as being involved based on the uncorroborated testimony of two witnesses who were, "in [the court's] view" both accomplices. Thereafter, we granted *certiorari.* 385 Md. 161, 867 A.2d 1062 (2005).

## STANDARD OF REVIEW

 The standard of appellate review that we apply in a juvenile delinquency matter is mandated by Maryland Rule 8–131(c).[4] The first question presented to this Court is whether the Court of Special Appeals erred in holding that the accomplice corroboration rule applies in juvenile cases. As a pure question of law, the appropriate standard of review is *de novo.* When the trial court's decision "involves an interpretation and application of Maryland ... case law, [we] must determine whether the [trial court's] conclusions are legally correct ...". *Nesbit v. Government Employees Insurance Company*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004). *See Helinski v. Harford Mem. Hosp., Inc.*, 376 Md. 606, 614, 831 A.2d 40, 45 (2003) (noting that we must apply the law as we discern it to be); *Ferris v. State*, 355 Md. 356, 368, 735 A.2d 491, 497 (1999).

The second question is whether the intermediate appellate court erred in concluding that the evidence was insufficient to support the juvenile judge's finding of involvement because there was no corroboration of the testimony of the two alleged

---

4. Rule 8–131(c) **Action tried without a jury.**

When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses.

accomplices. In the case, *In re Timothy F.*, 343 Md. 371, 380, 681 A.2d 501, 505 (1996), we said:

> Appellate review of the [trial] court's judgment on the evidence is limited to determining whether there is a sufficient evidentiary basis for the court's underlying factual findings. In a criminal case, the appropriate inquiry is not whether the reviewing court believes that the evidence establishes guilt beyond a reasonable doubt, but rather, whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

We have applied the same standard of review in juvenile delinquency cases. *In re Antoine H.*, 319 Md. 101, 107–108, 570 A.2d 1239, 1242 (1990). Consistently, we have held that the judgment of the trial court will not be disturbed unless the trial judge's findings of fact are clearly erroneous. *In re Timothy*, 343 Md. at 380, 681 A.2d at 505.

## DISCUSSION

### 1.

Whether the accomplice corroboration rule applies to juvenile proceedings is a matter of first impression in this Court. The State relies on *In re Victor B.*, 336 Md. 85, 646 A.2d 1012 (1994), as well as the legislative history of the juvenile causes law, to support its assertion that the accomplice corroboration rule, applicable in criminal cases, does not apply in juvenile proceedings.

In 1969, on the recommendation of the Rules Committee, we adopted Md. Rule 912(c), which specified that, "[t]he rules of evidence applicable to criminal cases shall apply to [juvenile] delinquency hearings." Md. Rule 912(c) (effective July 1, 1969).[5] The State argues that if the history of the law of juvenile causes was complete as of July 1, 1969, an argument

---

5. The July 1, 1969 version of Md. Rule 912(c) also provides that, "[t]he rules of evidence applicable to civil cases shall apply to all other hearings."

could be made that the corroboration requirement applies in juvenile proceedings. The language of Md. Rule 912(c), however, no longer exists and its language has not survived. *See In re Delric H.*, 150 Md.App. 234, 246, 819 A.2d 1117, 1124 (2003) ("As a result of the amendment to Chapter 900 of the Maryland Rules, there is no present counterpart to former Rule 912(c), nor has there been since the passage of the Juvenile Causes Act in 1975.").

In 1975, Chapter 900 of the Maryland Rules was completely revised. The new evidence rule regarding adjudicatory hearings stated that, "[t]he allegations of a juvenile petition alleging delinquency must be proved beyond a reasonable doubt before a respondent may be adjudged delinquent. An uncorroborated confession made by a child out of court is not sufficient proof of delinquency." Md. Rule 914(e)(1). In an Order of this Court dated June 5, 1996, effective January 1, 1997, we renumbered this rule. It is currently Md. Rule 11–114 (2005). Language with respect to the proof in a petition alleging delinquency has remained the same throughout the subsequent revisions to Rule 914(e)(1). It is the State's position that silence on the issue of accomplice testimony compels the conclusion that the rule requiring corroboration was never intended to be applied in juvenile proceedings, and it should not be said to apply now.

The State further argues that the rule requiring the corroboration of accomplice testimony has never been constitutionally compelled, and, therefore, it is not necessary for this Court to adopt the rule to juvenile proceedings as we have done in the adoption of other constitutional procedural safeguards. *See In re Thomas J.*, 372 Md. 50, 811 A.2d 310 (2002) (holding that the right to a speedy trial extends to juvenile delinquency proceedings, as one of "the essentials of due process and fair treatment" required by *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967)); *In re Michael W.*, 367 Md. 181, 786 A.2d 684 (2001) (extending the double jeopardy prohibition to juvenile proceedings); *In re Parris W.*, 363 Md. 717, 770 A.2d 202 (2001) (extending the right to counsel to juvenile proceedings).

Respondent adopts the position taken by the Court of the Special Appeals that the accomplice corroboration rule applies to juvenile delinquency proceedings. Respondent also notes the similarities between criminal and juvenile proceedings,[6] including the common applicability of the reasonable doubt standard.[7] In addition, the respondent recognizes that the accomplice corroboration rule is a product of case law promulgated by this Court. While it is true that no Maryland Rule or statute imposes the accomplice corroboration rule to juvenile cases, the respondent asserts that it is equally true that no Maryland Rule or statute imposes such a requirement in adult prosecutions. Furthermore, according to the respondent, the rationale for the accomplice corroboration rule in adult proceedings is to provide evidentiary protection to the accused and to provide such protection is a legitimate concern present in juvenile proceedings.

### The Accomplice Corroboration Rule

In order to sustain a conviction of an adult based upon the testimony of an accomplice, that testimony must be cor-

---

**6.** An alleged delinquent can lose his freedom, both prior to and following adjudication. *See* Md.Code (2002 Repl.Vol.), §§ 3–8A–15 of the Md. Cts. & Jud. Proc. Art. (describing the protocol for detention and shelter care of juveniles prior to a hearing); Md. Cts. & Jud. Proc., §§ 3–8A–19(d)(1) (2002) ("In making a disposition on a petition under this subtitle, the court may . . . (ii) commit the child to the custody or under the guardianship of the Department of Juvenile Justice, the Department of Health and Mental Hygiene, or a public or licensed private agency on terms that the court considers appropriate. . . ."). A court may also order a juvenile to pay restitution. *See* Crim. Proc. Art. § 11–603 ("A court may enter a judgment of restitution that orders a defendant or child respondent to make restitution in addition to any other penalty for the commission of a crime or delinquent act," if as a direct result of the crime, specific qualifications are met.).

**7.** *See* Md.Code (2002 Repl.Vol.), § 3–8A–18(c) of the Cts. & Jud. Proc. Art. which states "(1) Before a child is adjudicated delinquent, the allegations in the petition that the child has committed a delinquent act must be proved beyond a reasonable doubt (2) Before a child is found to have committed the violation charged in a citation, the allegations in the citation must be proved beyond a reasonable doubt."

roborated by some independent evidence. *Williams v. State,* 364 Md. 160, 179, 771 A.2d 1082, 1093 (2001) ("The longstanding law in Maryland is that a conviction may not rest on the uncorroborated testimony of an accomplice."); *Collins v. State,* 318 Md. 269, 280, 568 A.2d 1, 6 (1990) ("The rule in Maryland that a person accused of a crime may not be convicted based on the uncorroborated testimony of an accomplice is well established.").

The accomplice corroboration rule was created by this Court in the case of *Luery v. State,* 116 Md. 284, 81 A. 681 (1911), which noted:

> [T]he undoubted fact is that the experience of the courts, which is certainly much greater than that of juries, is that it is unsafe, at least in the great majority of cases, to rest a conviction upon the uncorroborated evidence of an accomplice. . . . As the reason for the rule, as adopted by most courts, is that the testimony of an accomplice alone and unsupported is regarded as too doubtful to be safe, the important matter is to have him supported in at least some of the material points involved tending to show the guilt of the accused.

*Luery,* 116 Md. at 293–94, 81 A. at 684.

The necessity for the rule was later explained and emphasized in *Watson v. State,* 208 Md. 210, 117 A.2d 549 (1955), in the following terms:

> The reason for the rule requiring the testimony of an accomplice to be corroborated is that it is the testimony of a person admittedly contaminated with guilt, who admits his participation in the crime for which he particularly blames the defendant and it should be regarded with great suspicion and caution, because otherwise the life or liberty of an innocent person might be taken away by a witness who makes the accusation either to gratify his malice or to shield himself from punishment, or in the hope of receiving clemency by turning State's evidence.

*Watson,* 208 Md. at 217, 117 A.2d at 552 (citations omitted).

In *Brown v. State,* 281 Md. 241, 378 A.2d 1104 (1977), the defendant appealed a murder conviction contending that it

rested solely on the uncorroborated testimony of an accomplice. On *certiorari*, the parties addressed whether the long-standing rule that a person accused of a crime may not be convicted on the uncorroborated testimony of an accomplice should be abandoned. We stated:

"[T]he evidence of an accomplice is universally received with caution and weighed and scrutinized with great care.... When such a one has as a motive the prospect of freedom, a milder sentence or the favor of the officers who have him in charge, an innocent one may undoubtedly be made to suffer, if great caution is not used. Hence, it would seem to be safer to require some corroboration."

*Brown*, 281 Md. at 243–244, 378 A.2d at 1106–1107 (quoting *Luery*, 116 Md. at 292–93, 81 A. at 684). Not much in the way of evidence is required to corroborate the testimony of an accomplice. *Brown*, 281 Md. at 244, 378 A.2d at 1107. This Court saw the need to retain the accomplice corroboration requirement due to the escalating prosecutorial trend to freely utilize accomplices as State witnesses. *Brown*, 281 Md. at 246, 378 A.2d at 1108. In *Brown*, we also noted that, "[even] those jurisdictions which ... do not require corroboration of an accomplice's testimony all reflect concern about the reliability of accomplice testimony," and recognize that the "testimony should be received with caution and scrutinized with care." *Brown*, 281 Md. at 245, 378 A.2d at 1107.

### Juvenile Causes Law

"Prior to the beginning of the twentieth century, under the common law view prevalent throughout the country, children above the age of seven were tried as adults," and they "were afforded the same legal protections and received the same punishments as adult criminal offenders." *In re Victor B.*, 336 Md. 85, 90, 646 A.2d 1012, 1014 (1994) (citing *In re Johnson*, 254 Md. 517, 521, 255 A.2d 419, 421 (1969), *appeal dismissed*, 403 U.S. 926, 91 S.Ct. 2257, 29 L.Ed.2d 706 (1971)). Following a national trend for reform, due to an acknowledgment of the inherent differences between adults and children, jurisdictions throughout the country began creating separate systems of

courts that addressed the needs of juvenile offenders. *In re Victor B.*, 336 Md. at 90, 646 A.2d at 1014. "In contrast to the adversarial nature of the adult system ... juvenile proceedings were informal and flexible in nature, psychiatric and psychological assistance was sought, the rules of evidence relaxed, and many proceedings were not open to the public." *In re Victor B.*, 336 Md. at 91, 646 A.2d at 1014 (citations omitted).

Over the next century, however, delinquency proceedings began to take on the more rehabilitative and retributive nature of adult criminal proceedings. *In re Victor B.*, 336 Md. at 90–91, 646 A.2d at 1014. Whether specific protections provided to adult defendants would also be provided to juveniles was first discussed in depth in 1967 by the United States Supreme Court in *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.E.2d 527 (1967). Because of the increasingly penal overtones of juvenile court systems, *Gault* held that juvenile proceedings which may lead to commitment in a state institution must measure up to the "essentials of due process and fair treatment." These essentials include written notice of the charges to the child and parents in advance to allow for preparation, notification of the right to either retained or appointed counsel, awareness of the constitutional privilege against self-incrimination, and, absent a valid confession, a determination of delinquency and an order of commitment based only on sworn testimony subject to the opportunity for cross-examination in accordance with constitutional requirements. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.E.2d 527.

"We have previously noted that juvenile proceedings are civil and not criminal in nature...." *In re Thomas J.*, 372 Md. 50, 57, 811 A.2d 310, 314 (2002) (quoting *In re Anthony R.*, 362 Md. 51, 69, 763 A.2d 136, 146 (2000)). Nonetheless, we recognize that only a prosecutor can initiate juvenile delinquency proceedings. *See* Md.Code (1974, 2002 Repl.Vol.) § 3–8A–10(c)(4)(ii) of the Cts. & Jud. Proc. Article. The juvenile delinquency proceeding is a prosecution in lieu of criminal proceedings. *See In re William A.* 313 Md. 690, 694, 548 A.2d 130, 132 (1988); *see also Lopez–Sanchez v. State*, 388 Md. 214,

879 A.2d 695 (2005) (acknowledging that "so many rights enjoyed by criminal defendants have been held to apply in juvenile proceedings that many of the procedural distinctions between the two types of proceedings ... have all but disappeared") (citations omitted). In that case we said:

> The raison d'etre of the Juvenile Causes Act is that a child does not commit a crime when he [or she] commits a delinquent act and therefore is not a criminal. [The child] is not to be punished but afforded supervision and treatment to be made aware of what is right and what is wrong so as to be amenable to the criminal laws.

313 Md. at 695, 548 A.2d at 132 (1988) (citations omitted).

Although the proceedings are civil in nature, "[t]his does not mean that a juvenile gives up all rights that a person would be entitled to in a criminal proceeding." *Id.* As such, this Court has recognized that some, but not all, rights granted to a criminal defendant are applicable in juvenile proceedings. *See, e.g., In re Thomas J.,* 372 Md. 50, 58–59, 811 A.2d 310, 315 (2002) (holding that juveniles must be afforded a speedy trial in delinquency proceedings as a matter of fundamental fairness); *see also Lopez–Sanchez,* 388 Md. at 225, 879 A.2d at 701 (2005) (listing rights that are applicable in juvenile delinquency proceedings).[8]

In Maryland, the accomplice corroboration rule as applied to adults was developed under the common law, rather than by constitutional or statutory mandate.[9] Although we have ad-

---

**8.** *In re Michael W.,* 367 Md. 181, 185, 786 A.2d 684, 687 (2001) (prohibition against double jeopardy); *In re Parris W.,* 363 Md. 717, 724, 770 A.2d 202, 206 (2001) (right to effective assistance of counsel); *In re Anthony R.,* 362 Md. 51, 76, 763 A.2d 136, 150 (2000) (statute of limitations equivalent to that for criminal misdemeanor offenses); *In re Montrail M.,* 325 Md. 527, 532–538, 601 A.2d 1102, 1104–1107 (1992) (doctrine of merger); *In re William A.,* 313 Md. 690, 698, 548 A.2d 130, 133–134 (1988) (infancy defense).

**9.** *See Brown v. State,* 281 Md. 241, 245, 378 A.2d 1104, 1107 n. 2 (1977) (noting that in 1977 only Maryland and Tennessee required corroboration of an accomplice's testimony as a matter of case law, and that at

dressed the application of constitutional protections to juveniles, we have not addressed whether this specific common law evidentiary rule applies. Several other jurisdictions, however, have discussed the issue with the majority holding in favor of extending the rule.[10]

Under the Georgia statute,[11] conviction of an adult based upon the testimony of an accomplice may only be sustained if corroborating facts or circumstances connect the defendant to the crime or lead to an inference of his or her guilt, and such corroboration must be independent of the accomplice's testimony. *T.L.T. v. State*, 133 Ga.App. 895, 212 S.E.2d 650, 653 (1975) (citing *West v. State*, 232 Ga. 861, 209 S.E.2d 195 (1974); *Quaid v. State*, 132 Ga.App. 478, 208 S.E.2d 336 (1974)). In the juvenile context, the Georgia statute [12] "requires that a

---

that time, 17 other states had statutes requiring corroboration of an accomplice's testimony).

**10.** Georgia *T.L.T. v. State*, 133 Ga.App. 895, 212 S.E.2d 650 (1975), Iowa (*In re Dugan*, 334 N.W.2d 300 (1983)), Minnesota (*In re D.S.*, 306 N.W.2d 882 (1981)), Nevada (*A Minor v. Juvenile Dep't Fourth Judicial Dist. Court*, 96 Nev. 332, 608 P.2d 509 (1980)), New York (N.Y. Fam. Ct. Act § 343.2 (McKinney 1962)), North Dakota (*In re B.S.*, 496 N.W.2d 31 (1933)), and Oklahoma (*Smith v. State*, 525 P.2d 1251 (Okla.Crim.App.1974)) have extended the accomplice corroboration rule to juvenile proceedings.

**11.** O.C.G.A. § 24–4–8 (2004), formerly O.C.G.A. § 38–121 (1933) provides,

The testimony of a single witness is generally sufficient to establish a fact. However, in certain cases, including prosecutions for treason, prosecutions for perjury, and felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness, except in prosecutions for treason.

**12.** The Georgia code was revised after the *T.L.T.* opinion was reported. The current language relating to juvenile proceedings is located at Ga.Code Ann. § 15–11–65(a) (2004). The statute provides, "[i]f the court finds on proof beyond a reasonable doubt that the child committed the acts by reason of which he or she is alleged to be delinquent or unruly, it shall proceed immediately or at a later time to conduct a dispositional hearing for the purpose of hearing evidence as to whether the child is in need of treatment, rehabilitation, or supervision and shall make and file its findings thereon."

court must find on proof beyond a reasonable doubt that the child committed the acts by reason of which he is alleged to be delinquent." *T.L.T.*, 212 S.E.2d at 654. The Georgia court emphasized Georgia's statutes requiring, *inter alia*, proof beyond a reasonable doubt and United States and Georgia Supreme Court decisions extending criminal rights to juveniles. *Id.* The Georgia court then concluded that a "juvenile charged with 'delinquency' is entitled by right to have the court apply those common law jurisprudential principles which experience and reason have shown are necessary to give the accused the essence of a fair trial," including independent corroborative evidence of an accomplice's testimony. *Id.*

In _____, *A Minor v. Juvenile Dept. Fourth Judicial District*, 96 Nev. 332, 608 P.2d 509 (1980), the Supreme Court of Nevada held that the accomplice corroboration requirement, mandated by statute,[13] applies to proceedings wherein minors are adjudged juvenile delinquents. The court opined that, "[a]lthough the Nevada statute by its terms forbids only 'convictions' upon uncorroborated accomplice testimony, this Court has not interpreted this language mechanically." _____, *A Minor*, 608 P.2d at 510. In addition, the statute governing juvenile adjudications requires proof beyond a reasonable doubt upon competent, material, and relevant evidence that a child has committed the acts by reason of which he is alleged to be delinquent.[14] *Id.* The court held that the corrob-

---

**13.** NRS § 175.291 (2004). Testimony of accomplice must be corroborated; sufficiency of corroboration; accomplice defined.

 1. A conviction shall not be had on the testimony of an accomplice unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof.

 2. An accomplice is hereby defined as one who is liable to prosecution, for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.

**14.** NRS § 62D.040(4) (2004), formerly NRS 62.193(4), provides,

 If the child is alleged to have committed a delinquent act, the allegations in the petition must be established by proof beyond a

oration requirement should be applied in juvenile proceedings consistent with *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (holding that in the interest of fundamental fairness, the Double Jeopardy Clause of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, attaches to a juvenile's adjudicatory hearing). *Id.*

Although Georgia and Nevada have recognized that applying the accomplice corroboration rule to juvenile proceedings comports with "common law jurisprudential principles" and "fundamental fairness," two jurisdictions have declined to extend the rule. The California Supreme Court held that, although a conviction statutorily requires corroboration of accomplice testimony,[15] a finding of juvenile delinquency does not constitute a conviction. Therefore, the court held that the statute does not require application of the rule to juvenile proceedings. *In re Mitchell P.*, 22 Cal.3d 946, 151 Cal.Rptr. 330, 587 P.2d 1144, 1146 (1978). As a matter of constitutional due process, the court noted that "the essentials of due process and fair treatment," as stated in *Gault*, "[do] not compel the accomplice corroboration rule in either criminal or juvenile proceedings." *In re Mitchell P.*, 151 Cal.Rptr. 330, 587 P.2d at 1147. Consequently, the court was not compelled to extend the rule as a matter of constitutional due process. The court also remarked that, although the accomplice corroboration rule has been codified by the California Legislature to apply to adults in criminal proceedings, equal protection does not require that the rule also apply in juvenile proceedings. *In re Mitchell P.*, 151 Cal.Rptr. 330, 587 P.2d at 1148–49. The

---

reasonable doubt based upon competent, material and relevant evidence.

**15.** Cal.Penal Code § 1111 (2004).

A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given.

court concluded that the disparities between juveniles and adults were reasonably related to the purpose of keeping juvenile proceedings sufficiently informal and distinct from adult criminal proceedings. *Id.*

In *Munhall v. State of Arkansas,* 337 Ark. 41, 986 S.W.2d 863 (1999), the Arkansas Supreme Court agreed with the California court and declined to apply the Arkansas statute [16] requiring corroboration of accomplice testimony to juvenile proceedings. The Arkansas court explained that the clear legislative intent as evidenced by the plain language of the statute limits its applicability to adults. The words "conviction," "felony," and "defendant" do not apply in juvenile proceedings. *Munhall,* 986 S.W.2d at 864. The court concluded that "[i]f the accomplice-corroboration rule ... is to be extended to juvenile hearings, it must be by legislative enactment." *Munhall,* 986 S.W.2d at 865. Subsequently, in 2001 the Arkansas legislature amended their statute to reflect that in felony cases the accomplice corroboration rule applies in juvenile proceedings. *See* Ark.Code Ann., § 16–89–111(e)(1)(A) (1987, 2003 Supp.) ("A conviction or an adjudication of delinquency cannot be had in any case of felony upon testimony of an accomplice including in juvenile court, unless corroborated by other evidence tending to connect the defendant or the juvenile with the commission of the offense.").

Similar to juvenile court statutes in both Georgia and Nevada, Maryland Rule 11–114(e)(1), which governs adjudicatory hearings in juvenile proceedings, requires that allegations that a juvenile committed a delinquent act be proven beyond a reasonable doubt. *See also* Md.Code (2002 Repl.Vol.), § 3–8A–18(c)(1) of the Cts. & Jud. Proc. Art. (stating that before a child is adjudicated delinquent, the standard of proof for allegations in the petition that the child has committed a

---

**16.** Ark.Code Ann. § 16–89–111(e)(1)(A) (1987).

A conviction cannot be had in any case of felony upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof.

delinquent act must be proven beyond a reasonable doubt). The right to proof beyond a reasonable doubt has been held to apply to both adults and juveniles by the United States Supreme Court. *See In re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1075, 25 L.Ed.2d 368 (1970) ("[T]he constitutional safeguard of proof beyond a reasonable doubt is as much required during the adjudicatory stage of a delinquency proceeding as are those constitutional safeguards applied in *Gault*," such as the right to counsel and the privilege against self-incrimination.).

Because the standard of proof beyond a reasonable doubt in juvenile cases is the same standard applied in adult criminal cases, the same concerns regarding the potentially untrustworthy nature of an accomplice's testimony in adult criminal proceedings, as noted in *Watson*, are also present in juvenile cases. In the present case, the Court of Special Appeals pointed out that, "a juvenile faced with the possibility of removal from his home and placement in some state facility for rehabilitation or treatment is no less entitled to the benefit of the accomplice-corroboration rule than an adult faced with possible incarceration for committing an identical offense. That analogy supports the concept of fundamental fairness." *In re Anthony W.*, 159 Md.App. 514, 524, 859 A.2d 679, 685 (2004). And as the respondent notes in his brief, the interest of trustworthy evidence applies with equal force regardless of the age of the person accused. We agree.

The State relies on the case of *In re Victor B.*, 336 Md. 85, 646 A.2d 1012 (1994), in which we addressed the question of whether the Criminal Rules of Procedure, under Title 4 of the Maryland Rules, apply to an adjudicatory proceeding in a juvenile case. The respondent in that case argued that the rules of Title 4 are applicable to juvenile proceedings when there is no guidance within the juvenile rules themselves. *In re Victor B.*, 336 Md. at 89–90, 646 A.2d at 1014. After considering "the pertinent procedural rules in light of the history and underlying policies of the juvenile court," we held that juvenile delinquency proceedings are governed *exclusively* by Chapter 900 of the Maryland Rules of Procedure and the

criminal rules under Title 4 do not apply to juvenile proceedings. *In re Victor B.*, 336 Md. at 90, 646 A.2d at 1014.

Although Chapter 900 of the Maryland Rules of Procedure exclusively governs juvenile delinquency proceedings, it is also within our authority to develop or extend common law rules. As stated in *In re Victor B.*, "[j]uvenile proceedings are governed by a separate, pervasive scheme of specific statutes and rules developed by the Maryland General Assembly and the Court of Appeals." *In re Victor B.*, 336 Md. at 96, 646 A.2d at 1017. Pursuant to this authority and in the interest of fundamental fairness, we extend the rule requiring accomplice corroboration to juvenile proceedings.

## II.

■ Having concluded that the accomplice corroboration rule applies in juvenile proceedings, we consider the question of whether the rule applies in this case. The juvenile court concluded that Steers and Gonzales were not accomplices, and, therefore, their testimony did not require independent corroboration.

The juvenile court's analysis was as follows:

[It had been argued that] fundamentally . . . an individual cannot be convicted on the basis of uncorroborated accomplice testimony.

\* \* \* \* \* \*

The fact that they drove the Respondent away, I don't believe makes anyone accomplices or accessories under any form of analysis because there was not, at least on the evidence I have, whatever we might assume, there's not evidence that the intent was to conceal the act or the perpetrator.

\* \* \* \* \* \*

I think Jose Gonzales testified rather sincerely that they pulled into the school parking lot and that while they were there, when they were in the parking lot, the Respondent, Tony W., got out of the car, broke into the bus, and started

to break out windows and sprayed the fire extinguisher. At some point after he started that, both Gonzales and Steers got onto the bus. To one extent or another, how vehemently and how sincerely they, they told him it was time to get, to stop it. Or not whether to stop it or not, but to leave. And I accept that when they got off they committed these thefts.

* * * * * *

It seems to me that this misdemeanor destruction of property began with the Respondent [Anthony W.] alone on the school bus. The fact that Gonzales and Steers at some point in this continuum may have committed independent crimes, misdemeanors, does not make them accomplices to this in the sense of the word for purposes of the evidentiary rule. For that reason I'm ... going to find that Tony is involved as to [the] charge of malicious destruction of property.

"To be an accomplice a person must participate in the commission of a crime knowingly, voluntarily, and with common criminal intent with the principal offender, or must in some way advocate or encourage the commission of the crime." *State v. Raines,* 326 Md. 582, 597, 606 A.2d 265, 272 (1992) (quoting *Watson v. State,* 208 Md. 210, 219, 117 A.2d 549, 553 (1955); *State v. Foster,* 263 Md. 388, 393, 283 A.2d 411, 413 (1971)). The act for which the respondent was adjudged, malicious destruction of property, is a misdemeanor. As such, all accessories are chargeable as principals. *Roddy v. Finnegan,* 43 Md. 490, 503–504 (1876); *Seward v. State,* 208 Md. 341, 346, 118 A.2d 505, 507 (1955); *Watson v. State,* 208 Md. 210, 217, 117 A.2d 549, 552 (1955). "The test commonly applied as to whether a witness is an accomplice is whether he himself could have been indicted and punished for the offense, either as a principal or as an accessory." *Harriday v. State,* 228 Md. 593, 596, 182 A.2d 40, 42 (1962) (citing *Coleman v. State,* 209 Md. 379, 386, 121 A.2d 254, 257 (1956)).

In *Coleman,* the defendant argued that there was insufficient evidence to convict him because he was convicted solely

as the result of the uncorroborated testimony of a witness he considered to be an accomplice. During the alleged accomplice's testimony, she stated that she knew nothing about the intent of the defendant to steal property, and there was no evidence that she served in the participatory role as a lookout. *Coleman*, 209 Md. at 387, 121 A.2d at 258. We stated, "[t]his case was tried by the trial judge without a jury. This Court should not reverse a judgment of conviction in a nonjury case unless it finds that the trial court's conclusion was clearly erroneous." *Id.* We held in that case that the trial judge was not clearly erroneous in finding that the witness was not an accomplice to the crime for which the defendant was convicted because there was evidence that the alleged accomplice sat outside in a truck while the breaking and entry occurred and that she had no knowledge that a crime was planned. *Id.*

In *Seward*, the defendant was convicted of malicious destruction of property for destroying a water tower and screen door with a bomb while associating with a group of boys. The defendant appealed based on the trial judge's finding that the defendant encouraged the commission of the crime and was therefore chargeable as a principal to the delinquent act. *Seward*, 208 Md. at 346, 118 A.2d at 506–507. Again, this Court stated that a judgment of conviction in a nonjury case should not be reversed unless the trial court's conclusion was clearly erroneous. *Seward*, 208 Md. at 346, 118 A.2d at 506–507. The defendant admitted to the police that all of the participants in the act discussed setting off the bomb, that he knew who was making the bomb, and who was setting it off. *Seward*, 208 Md. at 349, 118 A.2d at 508. Knowing that the placing of the bomb was contemplated, the defendant continued association with the group of boys and arrived at the locations with the intention of detonating a bomb and watching it explode. *Seward*, 208 Md. at 349–350, 118 A.2d at 508. We there concluded that, from the evidence or from proper inference from the evidence, the trial judge was not clearly wrong in finding that the appellant in some way encouraged the commission of the crime and was therefore an accomplice. *Seward*, 208 Md. at 350, 118 A.2d at 509.

In *Watson,* the defendant was convicted for the murder of a baby. The defendant claimed that one of the witnesses was an accomplice and that he could not be convicted based on the witness's uncorroborated testimony. *Watson,* 208 Md. at 216–217, 117 A.2d at 552. There was no evidence that the witness knew that the defendant intended to kill the child until he got the tub of water and put the child in it. *Watson,* 208 Md. at 219, 117 A.2d at 553. There was no evidence that she aided or abetted the crime or encouraged it. *Id.* In holding that she was not an accomplice we stated: "To be an accomplice a person must participate in the commission of the crime ... with common criminal intent with the principal offender, or must in some way advocate or encourage the commission of the crime." *Watson,* 208 Md. at 219, 117 A.2d at 553.

Returning to the present case, the Court of Special Appeals held that Anthony W., Steers, and Gonzales were all participants in the misdemeanor offenses of malicious destruction of the bus and the theft of the property inside. The court said:

Finding no easy access, [respondent] broke the door of a bus and entered. The alleged accomplices voiced no objection until the window breaking ensued. The offense was committed when the door was broken open; the window breaking was not a separate offense, it was an acceleration of the illegal activity in which all three engaged. We know of no authority for defining and accomplice based on who did what after an illegal entry is gained. The objective was to enter the bus by whatever means was required.

*In re Anthony W.,* 159 Md.App. 514, 519–520, 859 A.2d 679, 682 (2004). Due to this finding and the requirement that the accomplice corroboration rule applies to juvenile delinquency proceedings, the Court of Special Appeals held that Steers's and Gonzales's testimony needed independent corroboration, thereby reversing the judgment of the juvenile court.[17] *In re Anthony W.,* 159 Md.App. at 519, 859 A.2d at 682.

---

**17.** The Court of Special Appeals gave significant weight to the notion that the two witnesses sought to bolster their credibility by admitting that they stole a box of flares from the bus. *In re Anthony W.,* 159

 The question of whether the Circuit Court, sitting as a juvenile court, properly found that the two witnesses were not accomplices, is a mixed question of law and fact.

If there is no conflict in the evidence as to a witness's participation in a crime, or where his participation is conceded, the question whether the witness is an accomplice is one of law for the trial judge to determine. Conversely, where there is a conflict in the evidence as to the witness's participation in the crime either as a principal or as an accessory before the fact, the question of whether he is an accomplice is one of fact. . . .

*Rivenbark v. State,* 58 Md.App. 626, 635, 473 A.2d 1329, 1333 (1984), *aff'd in part, rev'd in part,* 311 Md. 147, 533 A.2d 271 (1987). *See also,* Maryland Rule 8–131(c). "This Court determines whether there was any evidence, or proper inference from the evidence, upon which the trial court could find the defendant guilty. If the record shows such evidence or proper inference, the Court of Appeals cannot find that the decision of the trial court was clearly erroneous." *Seward,* 208 Md. at 346, 118 A.2d at 507 (citations omitted).

 The burden of proving that Steers and Gonzales were accomplices rested on the respondent. "[The courts] have consistently recognized as the rule that the burden of proving by a preponderance of the evidence that a witness is an accomplice is on the defendant asserting it. They have applied it, and we have not repudiated it. . . . We deem it to be the rule in this State." *Bennett v. State,* 283 Md. 619, 623, 392 A.2d 76, 78 (1978).

 Respondent contends that, as a matter of law, Steers and Gonzales were accomplices whose testimony required

Md.App. at 518, 859 A.2d at 682. "At the time of their testimony, the charges against Steers had been stetted by the State, and Gonzales had refused to testify until his charges were *nol prossed.* The trial court expressed reservations about Steers's credibility due to his lying to a different judge about the theft of the flares. Gonzales blamed [respondent] for the entire breaking into the bus despite the fact that he drove the car to the school property." *In re Anthony W.,* 159 Md.App. at 518–519, 859 A.2d at 682.

independent corroborative evidence. Where the trial judge
has ruled that the witness is an accomplice as a matter of law,
for the appellate court to reverse that decision, the proof must
be so clear and decisive that reasonable minds could not differ
in coming to the same conclusion. *Burroughs v. State*, 88
Md.App. 229, 240, 594 A.2d 625, 630 (1991). *See also, Bishop
v. State*, 39 Md.App. 384, 390, 385 A.2d 1206, 1210 (1978)
("[T]he court must find, in effect, that the testimony was so
conclusive that, were a directed verdict of guilty available in a
criminal trial, and had the witness been the party charged
with the crime, it would have been the witness's fate to have
such entered against him.").

The State argues, and we agree, that the evidence respect-
ing whether Steers and Gonzales were accomplices is capable
of being determined either way. While we may agree with the
Court of Special Appeals that there was sufficient evidence to
determine that Steers and Gonzales were, in fact, accomplices
to the delinquent act charged, the evidence does not demand
or require that an appellate court make such a finding. In
addition, "[w]e have held repeatedly that when evidence relat-
ing to whether a witness is an accomplice is capable of being
determined either way and justifies different inferences in
respect thereto, the question is for the determination of the
trier of fact...." *State v. Foster*, 263 Md. 388, 393–394, 283
A.2d 411, 413–414 (1971) (citing, with approval, the Court of
Special Appeals in *Foster v. State*, 11 Md.App. 40, 46, 272 A.2d
810, 813 (1971)). Therefore, the clearly erroneous standard of
review is appropriate for this question.

The rationale behind the clearly erroneous standard is
settled. The trial judge is physically present during the
testimony and is able to observe matters not usually reflected
in a cold record, such as the demeanor and credibility of
witnesses. "That is to say, the judge has his finger on the
pulse of the trial." *State v. Hawkins*, 326 Md. 270, 278, 604
A.2d 489, 493 (1992). In *$3,417.46 U.S. Money v. Kinnamon*,
326 Md. 141, 149, 604 A.2d 64, 67–68 (1992) we further
elaborated:

[In a bench trial], the trial court is not only the judge of a witness's credibility, but is also the judge of the weight to be attached to the evidence. It is thus plain that the appellate court should not substitute its judgment for that of the trial court on its findings of fact but will only determine whether those findings are clearly erroneous in light of the total evidence.

*$3,417.46 U.S. Money,* 326 Md. at 149, 604 A.2d at 67 (citing *Housing Opportunities Comm'n v. Lacey,* 322 Md. 56, 59–60, 585 A.2d 219, 221 (1991), and *Kowell Ford, Inc. v. Doolan,* 283 Md. 579, 581, 391 A.2d 840, 841 (1978)).

Despite the Court of Specials Appeals's finding that Anthony W.'s window breaking was "an acceleration of the illegal activity in which all three engaged," we held in *Coleman* that, "the term 'accomplice' does not include a person who has guilty knowledge, or is morally delinquent, or who was even an admitted participant in a related but distinct offense." *Coleman,* 209 Md. at 385, 121 A.2d at 257 (quoting 2 Wharton, Criminal Evidence, 229, § 448 et seq. (12th Ed.)). In the present case, Steers and Gonzales admittedly participated in the taking of a box of flares from the bus. This act, however, is a separate and distinct offense from the malicious destruction of property. Likewise, assuming, for the sake of argument, that the property was posted against trespassers,[18] all parties here participated in that crime by entering the property and boarding the bus. Trespass, however, like the crime of theft is a separate and distinct offense. In addition, there is no evidence in the record that the alleged accomplices knew that the respondent intended to break the door of the bus and damage the interior of the bus. The court was not required to conclude from the evidence of their presence at the scene of the crime or their participation in distinct crimes that the alleged accomplices aided or encouraged the damage to the

---

18. Md.Code (2002), § 6–402(a) of the Crim. Law Article provides, in relevant part: "A person may not enter or trespass on the property that is posted conspicuously against trespass by: (1) signs placed where they reasonably may be seen...."

bus. As the juvenile court judge found, "the fact that Gonzales and Steers at some point in this continuum may have committed independent crimes ... does not make them accomplices to [the malicious destruction of property] in the sense of the word for purposes of the evidentiary rule."

Analyzing the evidence and testimony in the record, a rational trier of fact could have found that Steers and Gonzales were not accomplices. In the absence of a statement relating to why the judgment of the juvenile court was clearly erroneous, the Court of Special Appeals erred by not deferring to the juvenile court judge's factual findings. Accordingly, we reverse the Court of Special Appeals and hold that the Circuit Court, sitting as a juvenile court, was not clearly erroneous in finding that Steers and Gonzales were not accomplices and in relying on their uncorroborated testimony to determine Anthony W.'s involvement.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH DIRECTIONS TO AFFIRM THE JUDGMENT OF THE CIRCUIT COURT FOR FREDERICK COUNTY; COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY FREDERICK COUNTY.**